# Richmond

## George Washington Setliff v. Commonwealth of Virginia.

March 22, 1934.

Present, All the Justices.

The opinion states the case.

*Percy T. Stiers,* for the plaintiff in error.

*John R. Saunders, Attorney-General,* and *Edwin H. Gibson* and *Collins Denny, Jr., Assistant Attorneys-General,* for the Commonwealth.

CHINN, J., delivered the opinion of the court.

Plaintiff in error, George Washington Setliff, was indicted in the Corporation Court of the city of Danville on

the charge of making a malicious assault upon his wife, with intent to maim, disfigure, disable and kill.

That the accused assaulted his wife and inflicted a slight wound upon her with a pistol was admitted; the only defense offered being that the accused was insane at the time of the commission of the offense. He was convicted and sentenced to four years in the penitentiary, which judgment is now before this court for review.

The facts pertinent to the questions presented by the record may be briefly stated as follows:

The accused, a World War veteran, sustained injuries while in military service which affected his mind, and was thereafter discharged from the army because of his defective mental condition. In 1921, he was sent by the government to the Davis Clinic at Marion, Virginia, for treatment, where he was kept seven months. After coming back to his mother's home in Danville, where he resided with his wife, accused would frequently leave and be gone for periods of several months at a time, and no one would know where he was until the family would receive notice from some hospital that he was an inmate there. In December, 1928, he and his wife and children were planning to move to Durham, North Carolina, to live. They had packed their belongings and the accused went down the street to get someone to move them, when he disappeared and nothing was heard of him for over six months. On or about June 1, 1929, his mother received a letter from an army officer at Plattsburg Barracks, New York, to the effect that a man stationed there claimed to be her son; that he had been found by a board of medical officers "to be insane, suffering from *dementia præcox, moron type*," and asking, if he was her son, whether she would receive and care for him. This man turned out to be the accused and he was brought home by an attendant in July, 1929. Thereafter, he was sent by the government, through the Veteran's Bureau, to the Soldiers' Home at Dayton, Ohio, and subsequently to the government hospital at Chillicothe, Ohio, and came back to his mother's

home at Danville in February, 1932. On February 16, 1932, a commission of lunacy composed of Doctors Clyde L. Bailey and J. T. Daves and a justice of the peace, Ida Mandle, was held on the complaint of the mother of the accused. He was adjudged insane by the commission and committed to the care of his mother, who posted the proper bond. At or about the same time the American National Bank and Trust Company of Danville qualified as committee for the accused in order to collect the compensation allowed him for his disability.

The assault of which the accused was convicted took place on May 21, 1932, about three months after the commission was held, and he was immediately arrested and placed in jail. The evidence of the wife of the accused, upon whom the assault was made, and other members of the family is to the effect that the accused always showed deep affection for his wife, but did not act like a father toward the children. The evidence disclosed no motive for the assault.

A number of persons testified that when the accused was brought to jail his head was bleeding freely and he dropped off into unconsciousness; that for two or three weeks thereafter he did not seem to be normal and would not talk to anyone; that during the time the accused was in jail he had several fits which were always followed by periods of unconsciousness lasting from fifteen to thirty minutes.

At the resquest of Mr. W. H. Carter, trust officer of the American National Bank and Trust Company of Danville, committee of the accused, Dr. W. E. Jennings went to the jail and examined the accused one or two days after the attack on his wife. Dr. Jennings testified that after a careful examination of Setliff's mental condition he found that "he was insane, suffering from *dementia præcox,*" and that he was not mentally responsible at the time he made the assault upon his wife. Mr. Carter testified that he had known the accused for some time, had had frequent opportunities to observe him, and had observed him

with reference to his mental condition ever since the bank became his guardian; that in his opinion, the accused is insane and at times does not know right from wrong; that he went to the jail to see the accused immediately upon hearing of the attack, and that in his opinion, the accused was not mentally responsible for his act.

Doctors J. H. Bell and H. C. Henry testified that they examined the accused in jail June 23, 1932, and found no evidence of insanity; that *dementia præcox* is an incurable and progressive disease, and if the accused was suffering from it at the time of the attack he would have had it when they examined him; that there are thirty different types of *dementia præcox;* that they examined the accused for about three hours, and the doctors in the government hospitals who had the accused under observation for several months would probably have had a better chance to find out more about his mental condition.

On July 20, 1932, the court appointed Doctors Clyde L. Bailey, J. T. Daves and W. E. Jennings to examine the accused, who was in jail awaiting trial. These doctors reported to the court that the accused was an epileptic and mentally unsound; whereupon it was ordered that he be committed to the department of the criminal insane at Marion, Virginia, for care and observation pursuant to the provisions of section 4909, and acts amendatory thereof.

On August 17, 1932, Dr. George A. Wright, superintendent in charge of the above mentioned hospital, wrote a letter to the judge of the Corporation Court of the city of Danville informing him that in his opinion the accused was sane. On the same date an order was entered in a *habeas corpus* proceeding instituted in the Circuit Court of Smyth county, adjudging the accused to be a person of sound mind and establishing his status as such. The accused was thereupon sent back to jail at Danville, subject to the order of the corporation court. The case was set for trial at the September term of the court. A few

days before the case was to be tried the accused filed a petition setting out the relevant facts hereinbefore mentioned, alleging that, in order to properly present his defense, it was essential that he have the evidence of physicians at Plattsburg Barracks, New York, and of physicians at Chillicothe, Ohio, who had found that "the defendant was totally and permanently disabled by reason of his non-sane mind and memory." Accused further alleged that under the rules and regulations of the Veterans' Administration, the findings of its physicians and copies of their records could not be obtained without an order of the court, and asked that a commissioner be appointed to take the depositions of the aforesaid physicians, and to make copies of their records, and that the case be continued until such evidence could be procured.

The court refused to appoint a commissioner and to continue the case on the ground that depositions cannot be availed of in a criminal case, and this action of the court constitutes the first assignment of error.

While depositions have been used in chancery proceedings since early times, their use as evidence in criminal cases, or in civil suits at law was unknown to the common law. The right to take depositions in other than equity cases can, therefore, be conferred only by statute, which must be clear, and its requirements fully complied with before such evidence can be received. 8 R. C. L., 1131-32; 9 Amer. & Eng. Enc. of Law, p. 314, and cases cited.

It is generally conceded that it is competent for the legislature to permit the taking of evidence by deposition in criminal cases within the limits of the constitutional guaranties that the party charged has the right to be confronted with the accusers and witnesses, and the statutory requirement that the accused shall be present at every stage of the trial. It seems that such statutes have been adopted in many States, and in Virginia by section 4415 of the Code it is now provided that in rape cases the deposition of the female assaulted may, under the restrictions

therein set forth, be taken and read as evidence on behalf of the Commonwealth at the trial of the case. With the exception of section 4415 we find no statute in Virginia which authorizes depositions to be taken or used in a criminal prosecution.

It is insisted by the accused that section 6226 of the Code gives him the right to have the benefit of depositions of witnesses who are beyond the jurisdiction of the court. As may be seen, this statute merely provides how and by whom the deposition may be taken of a witness, "whether a party to the suit or not," who resides out of this State. It does not provide when or in what proceedings such a deposition may be read. As previously noted, under the old chancery practice, no statutory authority is needed to make depositions admissible in that class of cases; and section 6231 of the Code provides that depositions taken "in a civil case at law," under section 6226 and certain other sections therein mentioned, may be read in such case, under the conditions therein prescribed; but neither the last named section nor any other statute known to us authorizes a deposition taken under section 6226 to be read in a criminal case. In fact, reading all our statutes on the subject, both separately and as a whole, it seems apparent that, excepting section 4415 above noted, they were intended to deal with civil cases at law and in equity only, and none other. We are, therefore, of the opinion that the trial court was clearly right in denying the motion to continue the case for the purposes set forth in the petition.

The next assignment of error requiring discussion is the action of the court in admitting in evidence, over the objection of the accused, the judgment entered by the Circuit Court of Smyth county August 17, 1932, adjudging the accused as of that day to be of sound mind. We think this assignment is well taken. Section 4909 of the Code of 1930, provides that: "If a court, in which a person is held for trial, see reasonable ground to doubt his sanity or mentality at the time at which, but for such a doubt, he

would be tried, it shall suspend the trial," and either commit the accused to the proper hospital for care and observation, or else impanel a jury at its bar to inquire into and determine the sanity of the accused. In the instant case, as already stated, the court below adopted the first mentioned course, and committed the accused to the department of the criminal insane at the Southwestern State Hospital at Marion, Virginia, to be there "detained until he is restored to sanity, and held subject to the orders of this court." The statute (section 4909) requires that "the superintendent [of such hospital] shall from time to time, or as often as the court may require, inform the court of the condition of the said person while confined in the hospital;" and also provides that if such person is, in the opinion of the superintendent, not insane, or when such person, if insane, has been restored to sanity, the superintendent "shall give ten days' notice in writing to the clerk of the court from which such person was committed, and shall send such person back to the jail or custody from which he was removed, where he shall be held in accordance with the terms of the process by which he was originally committed or confined."

It thus appears that at the time the judgment hereinbefore referred to was entered in the *habeas corpus* proceedings by the Circuit Court of Smyth county, the accused, by the express terms of the statute, was subject to the exclusive jurisdiction and control of the Corporation Court of the city of Danville, wherein he was being held for trial, and which court was vested by the statute with exclusive power to determine, by one of the methods thereby prescribed, the mental fitness of the accused to be placed on trial; and, if then found sane, also vested with the sole authority to determine whether the accused was sane or insane at time of the commission of the offense of which he stood indicted.

The procedure in such cases being fixed by the statute, it seems plain that the judgment entered by the Circuit Court of Smyth county, while the trial of the accused

and the question of his sanity were pending in the Corporation Court of Danville, was a nullity so far as the procedure in the last named court is concerned, and should not, therefore, have been admitted in evidence on the trial of the issue of the sanity of the accused before the jury.

We think, moreover, that the said judgment was inadmissible upon the further ground that it embraced a recital of all the evidence upon which said adjudication was based, a part of which evidence is clearly hearsay and for that reason inadmissible in any form before the jury on said trial.

The next assignment of error relates to the action of the court in admitting in evidence before the jury the letter dated August 17, 1932, from Dr. George A. Wright, Superintendent of the Southwestern State Hospital, to the judge of the corporation court of Danville, expressing the opinion that the accused was at that time sane. While the statute requires that the superintendent of the hospital keep the court informed of the condition of the person committed to the hospital for care and observation, this information is intended solely for the guidance of the judge in determining whether such person is in a mental condition to be tried, and was not intended to be used as original evidence on the trial of the issue of the sanity of the accused under his plea of not guilty. *Wood* v. *Com.,* 146 Va. 296, 135 S. E. 895.

That the contents of the letter in question constituted hearsay in that it lacked the sanctity of an oath and the opportunity of cross-examination, and was for that reason inadmissible under the circumstances hardly seems to require the citation of authority. *Hines* v. *Com.,* 136 Va. 727, 117 S. E. 843, 35 A. L. R. 431; *Hopkins* v. *Wampler,* 108 Va. 705, 62 S. E. 926. We, therefore, deem it only necessary to say that we consider the admission of the letter in evidence prejudicial and reversible error.

The accused groups under one assignment of error the refusal of the court to give at his request numerous in-

structions embracing various definitions of insanity and abstract statements of law, based for the most part upon the theory that the accused having been adjudged insane prior to the commission of the offense with which he was charged, such insanity is presumed to continue until the contrary is proved, and the burden rested upon the Commonwealth to establish the sanity of the accused at the time of the commission of the offense.

Accused likewise groups under another assignment of error the action of the court in giving, over his objection, in behalf of the Commonwealth several instructions to the effect that the burden was upon the accused to prove to the satisfaction of the jury that he was insane at the time of said offense. As these assignments of error present the same question, they will be considered together. It is fundamental that every man is presumed to be sane until the contrary is made to appear, and the burden of proving insanity is on the person alleging it. But this rule is not without its modifications. In Virginia, in cases involving the validity of deeds, it has been often held that, if a previous condition of insanity has been established, the burden of proof is shifted to him who claims under the deed. *Artrip* v. *Rasnake,* 96 Va. 277, 31 S. E. 4; *Stearns* v. *Beckham,* 31 Gratt. (72 Va.) 379; *Burton* v. *Scott,* 3 Rand. (24 Va.) 399; and in *Rust* v. *Reid,* 124 Va. 1, 97 S. E. 324, 331 (a will case), it was held that, "After adjudication of insanity, a presumption of insanity continues, but a subsequent adjudication of restoration to sanity by competent authority restores the previous presumption of sanity until the contrary is made to appear." The cases above referred to are, however, civil cases, and the correct rule applicable to criminal cases is, therefore, one of first impression in this State. Upon the question of when the burden of proof shifts in criminal cases, if at all, the authorities appear to be in disagreement, but as far as we have had the opportunity to investigate the adjudged cases, the majority opinion seems to be that the question of whether a prior adjudication of insanity con-

tinues in force and shifts the burden of proof to the prosecution in cases of crime, depends upon the type or degree of the insanity which exists when the inquisition is held.  If the evidence shows that the insanity for which he was committed was of a permanent nature, and not merely temporary or partial, and there has been no prior adjudication to the contrary, it is generally held that the burden of proof shifts to the prosecution to establish the sanity of the accused at the time the crime is committed. On the whole, the holdings of the adjudged cases on the subject may be said to depend largely upon the facts and circumstances of each particular case, which doubtless accounts for the divergence of view among them in regard to the question.  See 7 A. L. R., note pages 568-607; 68 A. L. R., note pages 1309-1319.

In the case at bar the record of the inquisition held on February 16, 1932, fails to disclose the form of insanity from which the accused was then found to be suffering, or whether the same was permanent or temporary, and if we were compelled to look merely to the documentary evidence furnished by the inquisition, we would doubtless adopt another view.

Viewing the history of the accused as shown by the record, however, we think it plainly appears that from the time of his discharge from the army on account of his mental condition, the accused has been suffering from a mental derangement of a permanent nature which has already and steadily become more manifest.  In fact, excluding the letter of Dr. Wright on account of its inadmissibility, there is no evidence to sustain the sanity of the accused subsequent to the adjudication of February 16, 1932, except that of Doctors Bell and Henry, who examined the accused for three hours one month after the offense was committed.  On the other hand, the evidence of the wife and other members of the family of the accused, and other lay witnesses, including Mr. Carter who saw the accused immediately after the assault; the adjudication of the commission prior to the offense; the evidence

of Dr. Jennings who saw the accused within a period of two days after he was placed in jail, and who, with Doctors Bailey and Daves, examined the mental condition of the accused in jail subsequent to the assault, and who reported to the court that the accused was suffering from *dementia præcox,* a permanent and incurable form of insanity; the fact that the accused had been frequently confined in government hospitals for the insane, all show, or at least tend to show, that when the offense charged against him was committed, the accused was suffering from a permanent and incurable form of insanity, which shifted the burden of proof as to his sanity to the Commonwealth on his trial before the jury under his plea of not guilty.

For the reasons stated, we are of the opinion that the judgment complained of should be reversed and the case remanded to the Corporation Court of the city of Danville for a new trial to be had therein in accordance with the views expressed in this opinion.

*Reversed and remanded.*

CAMPBELL, C. J., and HUDGINS, J., concurring.