# Richmond

THOMAS JESSUP V. COMMONWEALTH OF VIRGINIA.

October 14, 1946.

Record No. 3144.

Present, Holt, C. J., and Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*W. A. Hall, Jr.,* for the plaintiff in error.

*Abram P. Staples, Attorney General,* and *W. Carrington Thompson, Assistant Attorney General,* for the Commonwealth.

SPRATLEY, J., delivered the opinion of the court.

Thomas Jessup was indicted on October 15, 1945, for housebreaking and grand larceny committed during the

night of September 10-11, 1945. Virginia Code, 1942 (Michie), sections 4439, 4440. On October 29, 1945, a question being raised as to the mental condition of the accused, he was, by order of the trial court, committed to the Eastern State Hospital, Williamsburg, Virginia, for observation as to his mental condition. Virginia Code, 1942 (Michie), section 4909. The Superintendent of the Eastern State Hospital, Dr. Joseph E. Barrett, under date of November 26, 1945, reported in writing to the court that in his opinion, as well as that of the entire staff of the hospital, Jessup was "not insane".

On December 4, 1945, on his plea of not guilty, Jessup was tried. Under this plea the issue was raised that the accused was feeble-minded and, therefore, not criminally responsible for the offense charged against him. The jury, however, found him guilty and fixed his punishment at 6 years confinement in the penitentiary. A motion to set aside the verdict of the jury was continued to December 14, 1945, and on that date was overruled. The trial judge, on December 21, 1945, sentenced the accused to 6 years in the penitentiary, but, in the same order, qualified the sentence as follows: "and it appearing to the court that the prisoner is of low mentality, it is ordered that in lieu of serving said sentence in the State penitentiary that he be committed to the criminal department of the Southwestern State Hospital, Marion, Virginia, to be received, kept and treated in said hospital according to law."

The evidence, without contradiction, clearly and conclusively shows that Thomas Jessup, acting in concert with three other young men, on the night of September 10-11, 1945, broke and entered a garage building at West Point, Virginia, and stole therefrom a large sum of money and other personal property of considerable value. Two of his accomplices, who had theretofore pleaded guilty and had been sentenced to the State penitentiary, testified in detail that Jessup actively participated in the crime and shared in the stolen loot. Jessup did not testify.

On the issue of the mental capacity of Jessup, Dr. Joseph E. Barrett, Superintendent of the Eastern State Hospital, was called as a defense witness. It developed that on November 28, two days after his official report to the court that Jessup was "not insane", Dr. Barrett wrote a letter to the trial judge which reads as follows:

"Re: Thomas Jessup.

"Dear Judge Mitchell:

"I filed my official report of observation in the case of the above named with the Clerk of the Court. I felt, however, it might be well for me to write you personally regarding him, giving information which cannot necessarily be included in the official report.

"Thomas Jessup has been a patient in this hospital on a previous occasion, namely, 1936, when he was committed here on court order for observation.

"He was not considered to be insane at that time nor is he considered by us to be insane. We have, however, made rather extensive studies of him and I believe the most significant finding is he is definitely feeble minded. We have made formal psychiatric examinations of his intelligence and find him to have a mental age of 8 years and 8 months, and an IQ of 58.

"During the entire time he has been under observation here he has not shown any evidence of mental abberation and has been able to conduct himself in a satisfactory manner in accordance with his intelligence."

Dr. Barrett testified that Jessup had been formerly committed to the Eastern State Hospital on November 4, 1936, and had been discharged therefrom on February 13, 1937, upon a report which bore the recital: "Diagnosis, mental deficiency, imbecile—not insane". He also referred to a report made December 17, 1936, by a former Superintendent of the same hospital to the Judge of the Circuit Court of Chesterfield County, Virginia. In that report it was stated that Jessup was "not insane" but an imbecile and had the type of mentality that could be easily persuaded for good

or bad and that it would be necessary to keep him well fed and free from anti-social groups. In Dr. Barrett's opinion, Jessup knew right from wrong, and had sufficient intelligence to plan and break in a garage and not to drive a car while drunk, yet he was mentally defective and feeble-minded to a serious degree. Dr. Barrett said it was not safe to allow Jessup to go at large unless he had "very constant supervision and guidance, and by some one who understands him and is willing to assume that responsibility". He admitted that he was in error in not having his report state that Jessup was feeble-minded.

Immediately after overruling the motion to set aside the verdict as contrary to the law and the evidence, the trial judge expressed the following opinion:

"On account of the boy being feeble-minded there is a question as to whether I should send him to the penitentiary, or send him to the Penal Department of the Feeble-minded.

"To be frank with you, in all due respect and deference to Dr. Barrett, I don't understand why he did not state that in his official report that the accused was feeble minded instead of writing me a personal letter. Be that as it may, when the Doctor has made an official report to me stating one thing, and a letter to me personally stating that he is feeble minded, and comes on the stand and says he is definitely feeble minded, the Court must take into consideration that this boy has a mind of a child 8 years and 8 months, from the Doctor's statement. Whether I should send him to the Criminal Department of the Feeble Minded rather than send him to the Penitentiary the Court is not advised at this time. Of course I can send him to the Penitentiary. Mr. Sutton has asked Mr. Hall a very pertinent question, as to which he would prefer, because I am going to send him to one or the other, that is to say the penitentiary or the Penal Department for the Feeble Minded at Marion, Virginia.

"The boy is feeble minded. There is no question about

that, judging from his personal appearance and from the appearance of his sister, Annie, who was on the stand".

The defendant makes numerous assignments of error. His principal assignments are, however, that the evidence established "the incapacity" of the defendant to commit the crime, and that the trial court was "without jurisdiction" to commit the defendant to the Southwestern State Hospital.

The Attorney General concedes that there is no warrant of law for the substituted sentence imposed on the defendant. He suggests that the invalid sentence be set aside and the case remanded to the trial court for the imposition of a sentence in accordance with the verdict of the jury.

The trial court gave four instructions at the request of the Commonwealth and five at the request of the defendant. There were no objections to any of the instructions. All of the instructions, save one, related to the trial of a normal person for the offense in question. The only one which dealt with the mental capacity of the accused read as follows:

"The Court instructs the jury that there are 2 theories, one advanced by the Commonwealth that the accused has the capacity required by law to commit the crime charged against him and the other advanced by the accused that he is lacking in such capacity under the law, the court therefore instructs you if upon consideration of all evidence in the case in accordance with the instructions as given you, you have any reasonable doubt as to which of the 2 theories are correct then you must resolve your doubt in favor of the accused and acquit him".

Provisions for the custody and care of insane and feeble-minded persons and the determination of their mental capacity are contained in Virginia Code, 1942 (Michie), chapter 46, sections 1004-1094.

Section 1045 which originally provided for the disposition of insane persons charged with or convicted of crime was, by amendment in 1932 (Acts of Assembly 1932, p. 41), made to apply specifically as well to the feeble-minded.

Section 1075 defines the words "feeble-minded person":

"The words 'feeble-minded person' in this chapter shall

be construed to mean any person with mental defectiveness from birth or from an early age so pronounced that he is incapable of caring for himself or managing his affairs, or of being taught to do so, and is unsafe and dangerous to himself and others, and to the community, and who consequently requires care, supervision and control for the protection and welfare of himself, others and the community, but who is not classible as an 'insane person' as usually interpreted".

Section 1085 outlines the duty of a court when a person is brought before it for any purpose other than an inquiry into his mental condition, and it appears to the court that such a person is feeble-minded.

In section 1094 it is expressly provided that, "All the provisions of this chapter relating to the insane, unless otherwise especially provided, shall apply to the feeble-minded".

"The words 'insane person' shall be construed to include every one who is an idiot, lunatic, non compos mentis, or deranged". Virginia Code, 1942 (Michie), section 5, clause 5.

Section 4908 provides: "No person shall, while he is insane, be tried for a criminal offense".

In this case the issue as to the mental capacity of the accused was first raised under the provisions of Virginia Code, 1942 (Michie), section 4909. The pertinent provisions of that section are as follows:

"If prior to the time for trial of any person charged with crime, either the court or attorney for the Commonwealth has reason to believe that such person is in such mental condition that his confinement in a hospital for the insane or a colony for the feeble-minded is necessary for proper care and observation, the said court or the judge thereof may, after hearing evidence on the subject, commit such person to any State hospital for the insane best adapted to meet the needs of the case * * * , under such limitations as it may order, pending the determination of his mental condition, * * * .

"If any such person so removed * * * is, in the opinion of

the superintendent, *not insane or feeble-minded,* * * * the said superintendent shall give ten days' notice in writing to the clerk of the court from which such person was committed, and shall send such person back to the jail or custody from which he was removed, where he shall be held in accordance with the terms of the process by which he was originally committed or confined.

"If the jury or commission find the accused to be sane at the time of their verdict, they shall make no other inquiry, and the trial in chief shall proceed. If the jury find that he is *insane or feeble-minded* at the time of their verdict, they shall further inquire whether or not he was *insane or feeble-minded* at the time of the alleged offense; if they find that he was also *insane or feeble-minded* at the time of the alleged offense the court may dismiss the prosecution and shall order him to be removed thence to the department of the criminal insane at the proper hospital, there to be detained until he is *restored to sanity.* If they find that he was not *insane or feeble-minded* at the time of the alleged offense, but is now *insane or feeble-minded,* the court shall order him to be confined in the department for criminal insane at the proper hospital until he is so *restored* that he can be put upon his trial". (Italics supplied).

It will thus be seen that in Virginia insanity and feeble-mindedness, as defined by Code, section 1075, are by the statutes put on the same plane with respect to criminal liability.

The official report of Dr. Barrett, dated November 26, 1945, did not conform to Code, section 4909, which required him to state his opinion whether Jessup was insane or feeble-minded.

Instruction F did not clearly and fairly submit to the jury the issue of defendant's mental capacity. It did not enlighten the jury as to the law of the case nor give a definition of the mental incapacity sufficient to relieve a person of criminal responsibility. In no instruction was there stated the required duty of the jury when the defense is feeble-mindedness. Code, section 4913. In view of the evidence as

to the mental condition of the accused, it was also the duty of the court, though unasked, to have instructed the jury, fully and clearly, upon the principles of law which govern the criminal liability of feeble-minded persons. *Dejarnette v. Commonwealth*, 75 Va. 867, 877.

The uncontradicted evidence of Dr. Barrett, the sole medical witness, is to the effect that Jessup is feeble-minded, incapable of caring for himself, unsafe and dangerous to himself and others, and requires constant care, supervision and control. The opinion of the trial judge and the subsequent commitment of the accused to the criminal department of the Southwestern State Hospital reflect the same conclusion by the trial judge.

■ The effect of the verdict of the jury was to find the defendant sane. *Stover v. Commonwealth*, 92 Va. 780, 22 S. E. 874. On it, the court was without power to commit the accused to a State hospital.

■ Convicts adjudged sane are confined in a jail or penitentiary. One adjudged insane or feeble-minded is not sentenced or committed to serve a fixed sentence, he is committed to the State hospital until restored to sanity, subject to such proceedings thereafter as may be required by law. If Jessup had been sentenced to confinement in the penitentiary, in accordance with the verdict of the jury, his mental capacity could have been determined during such confinement under the provisions of Code, section 4910.

Code, sections 4909, 4912 and 4913 were each amended in 1920 (Acts 1920, p. 507) by including feeble-minded persons in the class of the insane.

■ We are not unaware that in a proper case a legal sentence may be substituted for an illegal sentence theretofore pronounced (*Powell v. Commonwealth*, 182 Va. 327, 28 S. E. (2d) 687), but this case is not as simple as that. The trial court erred in failing to properly instruct the jury. It erred in failing to sustain the motion to set the jury's verdict aside. These errors deal with fundamental issues of the case. They prejudiced the rights of the defendant. He has not, therefore, had such a trial as our laws accord him.

Accordingly, the judgment of the trial court is reversed, the verdict of the jury set aside, and the case remanded for a determination of the mental condition of Jessup, in accordance with the provisions of the law, and, upon the determination of that issue, such further proceedings as may be thereby made to appear necessary and proper.

*Reversed and remanded.*