Clyde PANNELL, Appellant,

v.

W. K. CUNNINGHAM, Jr., Superintendent of the Virginia State Penitentiary, Appellee.

No. 8452.

United States Court of Appeals Fourth Circuit.

Argued Nov. 21, 1961.

Decided April 28, 1962.

Louis J. Richman, Jr. (court-assigned counsel), Newport News, Va., for appellant.

Reno S. Harp, III, Asst. Atty. Gen. of Virginia (Frederick T. Gray, Atty. Gen. of Virginia, on brief), for appellee.

Before SOBELOFF, Chief Judge, and BOREMAN and BRYAN, Circuit Judges.

PER CURIAM.

Upon a plea of guilty to the charge of rape, Clyde Pannell was sentenced on November 20, 1956, to twenty-five years in the Virginia State Penitentiary. After unsuccessful attempts at collateral relief in the state courts, he petitioned for a writ of habeas corpus in the United States District Court for the Eastern District of Virginia. He urged three grounds to establish the invalidity of his sentence: first, the offense was committed in Tennessee and, therefore, the Virginia court lacked jurisdiction over it; second, he was insane at the time of trial; and third, he was denied the effective assistance of counsel at his trial. The District Court conducted a hearing, considered the testimony of the petitioner and various depositions, but denied the petition and filed extensive findings of fact and conclusions of law. From the adverse determination the petitioner took the present appeal.

As to petitioner's first contention, the District Court concluded that there was ample evidence to support a finding that the crime occurred in Virginia. The victim identified a wooded area in Virginia, over three miles from the Tennessee border, as the spot where the offense was perpetrated, and, in addition, some of her clothing was found only a short distance away. The petitioner's attempt to undermine this evidence by challenging its credibility must necessarily fail. Credibility is for the trier of fact to decide, not for the appellate court. See,

e. g., United States ex rel. Bishop v. Watkins, 159 F.2d 505 (2d Cir. 1947).

■ In the District Court to prove his insanity at the time of the trial the petitioner showed that he attempted to hang himself after his arrest and that he received "gas treatments" while at the penitentiary. However, the record also showed that before trial the petitioner was committed to the Southwestern Hospital for psychiatric examination to determine his sanity, and he was found sane. The procedural fairness of this examination was not attacked, and the District Court, being of the opinion that it had been satisfactorily conducted, declined to reopen the question, citing Brown v. Allen, 344 U.S. 443, 458, 73 S.Ct. 397, 97 L.Ed. 469 (1953). We think the court acted within the latitude permitted it. Although there is little doubt that the state must provide an adequate means by which an accused can raise the issue of insanity, see United States ex rel. Smith v. Baldi, 344 U.S. 561, 568, 570, 73 S.Ct. 391, 97 L.Ed. 549 (1953), it has also been decided that federal district courts need not inquire again into the mental fitness of a state prisoner on habeas corpus where the question has been satisfactorily "canvassed" by the state. Id. at 570, 73 S.Ct. 391. See Hollis v. Ellis, 261 F.2d 230 (5th Cir. 1958); Jones v. Pescor, 73 F.Supp. 297 (W.D.Mo.1947), reversed on other grounds, 169 F.2d 853 (8th Cir. 1948).

■ The last point argued by the petitioner concerns the adequacy of the legal service rendered by one of his two court-appointed counsel. Petitioner contends that this lawyer, E. T. Carter, Jr., did not and could not effectively represent him on the charge of rape since his law partner had been retained to assist in prosecuting the petitioner on a murder charge then pending against him. He maintains that this was such conflict of interest as to necessarily impair the quality of Carter's service. The facts, however, do not support the theory advanced.

A week after the petitioner's indictment for the rape, Carter and R. D. Coleman, both local attorneys of considerable experience in criminal matters, were appointed by the court as defense counsel. After interviewing the petitioner and his family, they moved, with the concurrence of the state's attorney, to have the petitioner given a psychiatric examination at the state hospital. Following extensive examinations over a period of almost three months, the hospital superintendent reported to the court that the petitioner, though demonstrating some hysterical features, was then sane and able to testify in his own defense. The petitioner was recommitted by the court to the custody of the local authorities to await trial. During the interim the petitioner confessed to the murder in 1954, which attorney Carter's partner had been retained by the victim's family to prosecute almost two years before. When the petitioner was subsequently indicted for this offense, the court sought to appoint the two lawyers previously appointed in the rape case to defend the petitioner on the murder charge. Although Mr. Carter never had any contact with the family of the deceased nor any conference with his partner about the case, he declined the additional appointment because of his partner's participation in the murder case. Carter, however, did continue as one of petitioner's counsel in the rape case, together with R. D. Coleman, and the court appointed the brother of the latter, S. W. Coleman, to assist him in the defense of the murder charge. Both cases were heard the same day, and, after pleading not guilty to the rape, the petitioner changed his mind and pleaded guilty to that charge as well as to the murder. The court imposed consecutive sentences of twenty-five years for the rape and fifty years for the murder, as recommended by the state prosecutor.

Carter and R. D. Coleman testified that they had negotiated for the twenty-five year recommendation and had urged the petitioner to accept the offer. They testified that this action was taken because

their investigation had revealed the strength of the state's case and it was their opinion that a jury would likely impose a substantially more severe sentence than twenty-five years for the crime. While the petitioner pleaded guilty to the rape on the advice of his lawyers, it is no less apparent that he was counselled wisely. The state had two witnesses, the ten year old victim and the petitioner's twelve year old daughter, and local juries were known to deal harshly in rape cases.

As to the disinterested and loyal service rendered the defendant in the rape case by R. D. Coleman, no question is raised; and we conclude with the District Judge that there is no evidence of any improper influence upon his co-counsel, E. T. Carter, Jr., in the faithful discharge of his duty as defense counsel in that case, the only one with which he had any connection.

All of the above has been made clear by the hearing in the District Court. We approve the inquiry made to ascertain the facts.

Affirmed.

ALBERT V. BRYAN, Circuit Judge (concurring specially).

In my view the hearing of this case in the District Court need have gone no further than an examination of the petition to the District Court, the State court orders in the criminal case, the petition for habeas corpus in the Supreme Court of Appeals of Virginia and the petition for certiorari in the United States Supreme Court, all of which were pleaded by the petitioner.

The orders in the criminal case conclusively establish that the accused's plea of guilty was not accepted by the trial judge until he had meticulously inquired as to the defendant's understanding of it. Inquiry and explanation were addressed not only to his attorneys but personally to Pannell. The plea admitted the factual predicate to jurisdiction—that the offense occurred in Virginia. See Berg v. United States, 176 F.2d 122 (9 Cir.

1949) ; Knewel v. Egan, 268 U.S. 442, 446, 45 S.Ct. 522, 69 L.Ed. 1036 (1925). This is altogether different from the question of jurisdiction based on a pure question of law which Seymour v. Schneckloth, 368 U.S. 351, 353, 82 S.Ct. 424, 7 L.Ed.2d 346 (1962) held not waived by the plea.

In the petition in the District Court Pannell affirmatively asserts "the ability of his attorneys, as attorneys at law, is well known." There is nothing to sustain petitioner's concomitant allegations that these attorneys were ineffective in his behalf. The point he now makes with regard to the conflict of interest on the part of one of his attorneys, not so much as mentioned in the petition to the District Court, was not alleged in the Virginia Supreme Court of Appeals or United States Supreme Court. Therefore, since he had not exhausted State remedies on this head, the District Court was without power to entertain this question. 28 U.S.C. § 2254.

The State orders show beyond contradiction that petitioner's mental condition was the subject of cautious investigation by the State court before trial and that he was found competent and sound. This fully satisfied Federal requirements. Brown v. Allen, 344 U.S. 443, 458, 73 S. Ct. 397, 97 L.Ed. 469 (1953) ; United States ex rel. Smith v. Baldi, 344 U.S. 561, 568, 570, 73 S.Ct. 391, 97 L.Ed. 549 (1953). More basically still, the petition to the Virginia Supreme Court of Appeals expressly disavows reliance on this ground for relief. Thus it too has never been passed on in State habeas corpus, and was not properly before the Federal courts.

Time, effort and expense would have been saved if the hearing had concluded, as in law the issues were concluded, with the inspection of the State records. The very papers pleaded by the petitioner wholly refuted him. The disposition of the case on the basis of the State court record, whenever possible, is advisable. Brown v. Allen, supra, 344 U.S. at 463, 464 n. 19, 73 S.Ct. 397. The aim is to

avoid unnecessary visitation of the State courts. Id. at 447, 451 n. 5, 73 S.Ct. 397.

The action should be remanded with directions to the District Court to dismiss the petition as failing to state **a** case for habeas corpus.