Nathan THOMAS, Appellant,

v.

W. K. CUNNINGHAM, Jr., Superintendent of the Virginia State Penitentiary, Appellee.

No. 8650.

United States Court of Appeals Fourth Circuit.

Argued Sept. 27, 1962.

Decided Jan. 8, 1963.

W. A. Hall, Jr., Richmond, Va., for appellant.

Reno S. Harp, III, Asst. Atty. Gen. of Va. (Robert Y. Button, Atty. Gen. of Va., on brief), for appellee.

Before SOBELOFF, Chief Judge, and HAYNSWORTH and J. SPENCER BELL, Circuit Judges.

SOBELOFF, Chief Judge.

A state prisoner here seeks release on habeas corpus, claiming that he was placed on trial in the Virginia courts despite an uncontroverted showing that he was insane. The District Court dismissed the petition without a hearing but granted a certificate of probable cause for this appeal, "being of the opinion that a substantial question with regard to the allegations of insanity is presented."

Nathan Thomas alleged that he was indicted in Buchanan County, Virginia, in 1955 on five unrelated charges of grand larceny and one charge of removing stolen property into the state. On July 21, 1955, counsel selected by his family moved under Code of Virginia, 1960 § 19.1–228, that Thomas be committed to a state hospital for pre-trial observation and diagnosis as to his mental capacity to stand trial. In support of the motion two qualified psychiatrists testified that in their opinion, based on careful observation and analysis, Thomas was suffering from a serious psychosis and would be unable on that account to assist counsel or to understand the charges against him. No evidence to the contrary was introduced by the Commonwealth. Nevertheless, the trial judge summarily denied the motion and the next day Thomas by counsel pleaded guilty to all six indictments and was given six consecutive sentences of two years imprisonment on each charge—a total of twelve years.

Shortly thereafter Thomas was transferred to the jail of Dickenson County, from which he escaped. He was recaptured while driving a stolen automobile and on September 29, 1955, was indicted, arraigned, tried and convicted in the Circuit Court of Dickenson County on a charge of grand larceny growing out of that car theft. The same judge who had presided over the Buchanan County proceedings presided in this trial. An additional five-year sentence was imposed, thus raising Thomas' total commitment to 17 years. He was there represented by a new lawyer appointed by the court and the question of insanity was not raised.

I.

Before appraising the merits of Thomas' contentions, it is necessary to consider several procedural objections raised against federal jurisdiction of this case. We readily agree with the Commonwealth's argument that the sentence imposed by the Dickenson County court, which Thomas has not yet begun to serve, cannot be subjected to collateral attack unless it is first determined that his present detention is illegal. McNally v. Hill, 293 U.S. 131, 55 S.Ct. 24, 79 L. Ed. 238 (1934); Darr v. Burford, 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761 (1950). See also Heflin v. United States, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959) (federal prosecution).

On the other hand, there is no merit in the suggestion that Thomas has not exhausted his state remedies in respect to the Buchanan County convictions which account for his present detention. In 1959, while serving his fourth two-year sentence, he instituted habeas corpus proceedings in the Su-

preme Court of Appeals of Virginia (unreported decision). Relief was denied, as was his subsequent petition for certiorari. Thomas v. Smyth, 361 U.S. 890, 80 S.Ct. 165, 4 L.Ed.2d 125 (1959).

■ It is true that the sentence he was then serving has since expired and that he is now completing his sixth and final two-year term. But it is equally clear that the arguments unsuccessfully advanced in the state courts are identical with those presented here. Rejection of the claim that the trial court entertained criminal proceedings against Thomas while he was insane was as effective to deny relief from the sixth sentence as the fourth; the sentences were passed at the same time under identical circumstances. To insist now that he file a repetitive petition in the Virginia courts would be entirely unwarranted. The exhaustion requirement is not so inflexible as to compel a prisoner to run the gauntlet of state and federal courts once every few years and to harry them with precisely the same arguments already presented and rejected. Once a claim has been adjudicated by a state's highest tribunal, that is ordinarily sufficient to permit a petitioner to seek federal redress without the necessity for successive rounds of state court litigation. Cf., Grundler v. State of North Carolina, 283 F.2d 798 (4th Cir., 1960), cert. denied 362 U.S. 917, 80 S.Ct. 670, 4 L.Ed. 2d 738 (1961); Mounts v. Boles, 293 F.2d 42 (4th Cir., 1961).

■■ It does not appear from the moving papers, however, that Thomas ever took a direct appeal from his convictions. Normally failure to utilize a state's appellate machinery precludes relief in a collateral proceeding if the asserted errors could have been corrected on appeal. This is the essence of the "forfeiture" or "abortive state proceeding" problem discussed in Brown v. Allen, 344 U.S. 443, 482–487, 73 S.Ct. 397, 97 L.Ed. 469 (1953), and more recently

by this court in Whitley v. Steiner, 293 F.2d 895, 897–900 (4th Cir., 1961), cert. denied 368 U.S. 980, 82 S.Ct. 476, 7 L.Ed. 2d 521 (1962). See also Reitz, "Federal Habeas Corpus: Impact of an Abortive State Proceeding," 74 Harv.L.Rev. 1315 (1961). But the rule is not unyielding and "federal habeas corpus is allowed where time has expired without appeal when the prisoner is detained without opportunity to appeal because of lack of counsel, *incapacity*, [our emphasis] or some interference by officials." Brown v. Allen, supra, 344 U.S. at 485–486, 73 S.Ct. at 422; Whitley v. Steiner, supra, 293 F.2d at 899.[1] The instant case is clearly governed by the exception, for "incapacity" is manifest from the allegations of the petition. If Thomas was, as claimed, laboring under the incapacitating effect of insanity at his trial, it would be wholly unreasonable to bar access to the federal courts because of his initial failure to perfect an appeal. Massey v. Moore, 348 U.S. 105, 109, 75 S. Ct. 145, 99 L.Ed. 135 (1954). The District Court did not adopt such a view. Nor do we.

## II.

■ We turn to Thomas' primary contention that his convictions were tainted with unfairness amounting to a denial of due process because the state court put him on trial after being fully apprised of the possibility that he was then insane without meeting the issue of his mental capacity to stand trial. Because there has been no plenary hearing on the factual issues raised by his petition, as set forth earlier in this opinion, we must accept his allegations as true for the purposes of this appeal. Holly v. Smyth, 280 F.2d 536, 537 (4th Cir., 1960); Bolling v. Smyth, 281 F.2d 192 (4th Cir., 1960); Clark v. Warden, 293 F.2d 479, 481 (4th Cir., 1961); Jones v. Cunningham, 297 F.2d 851, 852 (4th Cir., 1962). The facts alleged entitle Thomas to a hearing on the question whether

---

1. For recent applications of the exceptions, see Mattox v. Sacks, 369 U.S. 656, 82 S.Ct. 992, 8 L.Ed.2d 178 (1962); Player v. Steiner, 292 F.2d 1 (4th Cir., 1961);

United States ex rel. Noia v. Fay, 300 F.2d 345 (2d Cir., 1962); cf., Clark v. Warden, 199 F.Supp. 29 (D.Md.1961).

he was insane at the time of the trial. Massey v. Moore, supra, 348 U.S. at 107, 75 S.Ct. at 146.

 It is a principle of long standing that an insane man may not be tried for a crime.[2] Virginia has assiduously observed this just rule and provides by statute: "No person shall, while he is insane, be tried for a criminal offense * * *."[3] Few would doubt that a defendant is entitled to be present at all stages of his trial. See Near v. Cunningham, 313 F.2d 929 (4th Cir., 1963). Cf., Rakes v. United States, 309 F.2d 686 (4th Cir., 1962). And yet one who is mentally deranged may be as far removed from the proceedings as if physically absent. What the petition here alleges is tantamount to absence, for it charges that "Thomas was definitely insane, and unable on account of said status of insanity of standing trial, or of aiding and assisting his counsel." A man whose mind is so crippled by psychosis that he cannot understand the proceedings or confer intelligently about the case is in no position to plead guilty or to consent to such a plea in his behalf. If the trial court accepted a plea of guilty from such a man, the resulting judgment is vulnerable to collateral attack.[4]

 Of course, an accused is presumed to be sane at trial unless his mental condition is called into question by proof to the contrary.[5] Likewise his efforts to overcome the presumption of sanity may be circumscribed by state prescriptions as to the quantum of proof and legal tests of insanity.[6] At the same time, procedural due process requires that a state shall afford him adequate opportunity to raise the issue.[7] In clear recognition of its constitutional obligation, Virginia expressly authorizes a hearing on the question whether "the person to be tried is in such a mental condition that his confinement in a hospital for the insane, or colony for the feebleminded, for proper care and observation is necessary to attain the ends of

2. In 4 Blackstone's Commentaries 24, it is said: "Also if a man in his sound memory commits a capital offense, and before arraignment for it, he becomes mad, he ought not to be arraigned for it; because he is not able to plead to it with the advice and caution that he ought. And if, after he has pleaded, the prisoner becomes mad, he shall not be tried: for how can he make his defense?"

3. Code of Virginia 1960 § 19.1–227, a statute said to be "declaratory of the common law." Delp v. Commonwealth, 172 Va. 564, 200 S.E. 594, 596 (1939).

4. United States ex rel. Smith v. Baldi, 344 U.S. 561, 73 S.Ct. 391, 97 L.Ed. 549 (1953). See Chief Judge Biggs' dissenting opinion in 192 F.2d 540, 552–58 (3d Cir., 1953), for the proposition that a collateral attack on a judgment imposed while the accused was insane is essentially an attack on the state court's jurisdiction. In Frame v. Hudspeth, 309 U.S. 632, 60 S.Ct. 712, 84 L.Ed. 989 (1940), and Bishop v. United States, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1955), the Supreme Court remanded "for the purpose of making a full inquiry into the mental status of the petitioner at the time he entered the plea of guilty."

5. Snider v. Smyth, 187 F.Supp. 299 (E.D. Va.1960), aff'd 292 F.2d 683 (4th Cir., 1961); Owsley v. Cunningham, 190 F. Supp. 608, 612 (E.D.Va.1961); Setliff v. Commonwealth, 162 Va. 805, 173 S.E. 517, 520 (1934); Wessells v. Commonwealth, 164 Va. 664, 180 S.E. 419, 422 (1935); Holober v. Commonwealth, 191 Va. 826, 62 S.E.2d 816, 821 (1951); Thompson v. Commonwealth, 193 Va. 704, 70 S.E.2d 284, 288 (1952).

6. Leland v. Oregon, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952). Virginia adheres to the M'Naghten Rule as supplemented by the "irresistible impulse" test. Thurman v. Commonwealth, 107 Va. 912, 60 S.E. 99, 101 (1908); Thompson v. Commonwealth, 193 Va. 704, 70 S.E.2d 284, 292 (1952); Christian v. Commonwealth, 202 Va. 311, 117 S.E.2d 72, 75–76 (1960).

7. United States ex rel. Smith v. Baldi, 344 U.S. 561, 568, 570, 73 S.Ct. 391, 97 L.Ed. 549 (1953); Pannell v. Cunningham, 302 F.2d 633, 634 (4th Cir., 1962). See also Whelchel v. McDonald, 340 U.S. 122, 124, 71 S.Ct. 146, 95 L.Ed. 141 (1950); Bishop v. United States, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835, reversing 96 U.S.App. D.C. 117, 223 F.2d 582 (1955).

justice."[8] Since a defendant cannot always be expected to demand an examination for himself, the judge may invoke the procedure *sua sponte*.[9] Upon a proper showing, several courses of action are open to a Virginia court. It may commit the accused to a mental institution for observation, appoint a commission of impartial experts in the field of psychiatry, or empanel a special jury to determine his mental status.[10] In any event, the Virginia law commands that the court "shall suspend the trial" until the accused is either pronounced sane or restored to sanity after a period of treatment.[11]

What emerges from this humane legislation is the assurance by the Commonwealth that one whose mental capacity to cope with the exigencies of a trial is in doubt shall not be put in jeopardy without a preliminary inquiry into his present mental condition. It is this right to a judicial determination of fitness to stand trial that Thomas allegedly asserted in the Buchanan County court.[12] Since due process entitled him to have the matter thoroughly "can-

8. Code of Virginia, 1960 § 19.1–228; Wood v. Commonwealth, 146 Va. 296, 135 S.E. 895, 898 (1926); Delp v. Commonwealth, 172 Va. 564, 200 S.E. 594, 596 (1939); Tilton v. Commonwealth, 196 Va. 774, 85 S.E.2d 368, 371 (1955). See W. W. Moore, "Procedural Methods for Raising Insanity in Criminal Actions in Virginia," 18 Wash. & Lee L.Rev. 365 (1961). At least 30 other states have statutes of a similar nature. For a comparison and analysis, see A. S. Goldstein and E. W. Fine, "The Indigent Accused, the Psychiatrist, and the Insanity Defense," 110 U.Pa.L.Rev. 1061, 1067–76 (1962).

9. Code of Virginia, 1960 §§ 19.1–228 et seq.

10. Ibid. See Moore, op. cit. supra at 366–68.

11. Code of Virginia, 1960 §§ 19.1–229 et seq.

12. This right is not to be confused with the contention that a state is constitutionally obligated to provide at public expense the services of psychiatrists whose expert testimony may later prove useful in establishing the affirmative defense of lack of criminal responsibility. See Goldstein and Fine, op. cit. supra n. 8. United States ex rel. Smith v. Baldi, 344 U.S. 561, 568, 73 S.Ct. 391, 97 L.Ed. 549 (1953); McGarty v. O'Brien, 188 F.2d 151, 155–156 (1st Cir.), cert. denied 341 U.S. 928, 71 S.Ct. 794, 95 L.Ed. 1359 (1951); Owsley v. Cunningham, 190 F.Supp. 608, 613 (E.D.Va.1961). It is to be noted, however, that once a defendant qualifies for a pre-trial commitment pursuant to Code of Virginia, 1960 §§ 19.1–228 et seq., the commission of examining psychiatrists "shall further inquire whether or not he was insane or feeble-minded at the time of the alleged offense" provided that it has already determined his present insanity. Id. § 19.1–231. Through this procedure the Commonwealth and defendant alike obtain the advantage of a professional and impartial investigation as to *both* issues of mental status where there might otherwise be none. See Goldstein and Fine, op. cit. supra at 1067–68.

A finding of insanity at all relevant times constitutes a permanent bar to prosecution. Code of Virginia, 1960 § 19.1–231. If, on the other hand, the commission determines that the defendant was lucid when he committed the crimes, but is presently insane, he may be eventually tried when his sanity is restored. Ibid. Should he then press the defense of prior insanity, either party may avail itself of the reports and testimony of the examining psychiatrists. The frequent use of such evidence is reflected in the following cases: Snider v. Cunningham, 292 F.2d 683 (4th Cir., 1961); Pannell v. Cunningham, 302 F.2d 633, 634 (4th Cir., 1962); Jessup v. Commonwealth, 185 Va. 610, 39 S.E.2d 638 (1946); Holober v. Commonwealth, 191 Va. 826, 62 S.E.2d 816 (1951); Day v. Commonwealth, 196 Va. 907, 86 S.E.2d 23 (1955); Lucas v. Commonwealth, 201 Va. 599, 112 S.E.2d 915 (1960), cert. denied 365 U.S. 815, 81 S.Ct. 697, 5 L.Ed.2d 694 (1961); Christian v. Commonwealth, 202 Va. 311, 117 S.E.2d 72 (1960). But while the availability of such evidence at state expense may be invaluable to an indigent accused unable to employ his own psychiatrists, this would appear to be a merely incidental consequence of the primary statutory objective of preserving his right to a fair trial by first resolving his mental capacity to understand the charges and the nature of the proceedings against him.

vassed" and the Commonwealth provided the means for it, the federal court is obliged to scrutinize the procedures by which his claim was rejected.[13]

■ Proceeding on a motion for pre-trial commitment for observation and report, Thomas was not required to prove actual insanity, as is necessary under Virginia law where lack of criminal responsibility is asserted as an affirmative defense.[14] His sole burden was to adduce facts sufficient to create in the court's mind "reasonable ground to doubt his sanity."[15] This comparatively light burden was met handily, assuming the truth of his allegations that two specialists testified without contradiction or reservation that he was presently in the grip of a serious psychosis disabling him from assisting his counsel.

To be sure, a denial of a motion for pre-trial examination cannot be assailed except for abuse of discretion.[16] But this is not a case where assertion of insanity rested merely upon the testimony of lay witnesses [17] or depositions,[18] or where there was a "battle of experts" leaving the issue in sharp dispute and presenting a question of credibility for the trier of fact to resolve.[19] Here it is alleged that insanity at the time of the trial was established by reliable and uncontroverted sworn medical testimony. On the strength of the *prima facie* showing, the trial court's refusal to suspend the proceedings and its decision to hold trial the very next morning was so arbitrary as to constitute a denial of due process.

We find it unnecessary to decide other points raised before us. For the reasons stated, the judgment of the District Court must be reversed and the case remanded for a hearing.

Reversed and remanded.

13. United States ex rel. Smith v. Baldi, 344 U.S. 561, 570, 571, 73 S.Ct. 391, 97 L.Ed. 549 (1953); Pannell v. Cunningham, 302 F.2d 633, 634 (4th Cir., 1962).

14. "If the accused relies on the defense of insanity, the burden is on him to prove to the satisfaction of the jury that he was insane at the time [of his criminal acts]. Reasonable doubt as to his insanity is not enough to excuse him." Thompson v. Commonwealth, 193 Va. 704, 70 S.E.2d 284, 288 (1952).

15. Code of Virginia, 1960 § 19.1–229; Tilton v. Commonwealth, 196 Va. 774, 85 S.E.2d 368 (1955).

16. Wood v. Commonwealth, 146 Va. 296, 135 S.E. 895, 898 (1926); Delp v. Commonwealth, 172 Va. 564, 200 S.E. 594, 596 (1939); Tilton v. Commonwealth, 196 Va. 774, 85 S.E.2d 368, 371 (1955); Owsley v. Cunningham, 190 F.Supp. 608, 613 (E.D.Va.1961).

17. Wood v. Commonwealth, supra; Tilton v. Commonwealth, supra.

18. Setliff v. Commonwealth, 162 Va. 805, 173 S.E. 517, 519 (1934).

19. Delp v. Commonwealth, 172 Va. 564, 200 S.E. 594, 596–97 (1939); McLane v. Commonwealth, 202 Va. 197, 116 S.E. 2d 274, 281 (1960); Jones v. Commonwealth, 202 Va. 236, 117 S.E.2d 67, 70 (1960). United States ex rel. Smith v. Baldi, 344 U.S. 561, 73 S.Ct. 391, 97 L.Ed. 549 (1953), decided on strikingly similar facts, is nevertheless clearly distinguishable from the instant case. There the testimony of two defense witnesses as to present insanity was rebutted by that of a court-appointed psychiatrist. And, in Lee v. Wiman, 280 F.2d 257 (5th Cir.), cert. denied 364 U.S. 886, 81 S.Ct. 176, 5 L.Ed.2d 106 (1960), a lunacy commission report that the accused was insane was introduced only on the question of his mental condition at the time of the offenses.