COURT OF APPEALS OF VIRGINIA


Present: Judges Humphreys, Kelsey and McClanahan
Argued at Alexandria, Virginia


KEITH JOHN ANDERSON

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0528-10-4               JUDGE ELIZABETH A. McCLANAHAN
                                                        MARCH 8, 2011
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
                            Lon E. Farris, Judge

            William J. Baker for appellant.

            Eugene Murphy, Senior Assistant Attorney General (Kenneth T.
            Cuccinelli, II, Attorney General, on brief), for appellee.


        The trial court convicted Keith John Anderson of grand larceny. Relying on Code

§ 19.2-169.1, Anderson argues on appeal that the trial court erred in failing to order *sua sponte*

an evaluation of his competency to stand trial after hearing his "bizarre" testimony (as neither he

nor his defense counsel raised the issue with the trial court). We reject Anderson's argument and

affirm his conviction.

        At oral argument on appeal, counsel for Anderson asserted that, because of Anderson's

"bizarre" testimony at trial, there was "a good suspicion that [Anderson] has some mental

difficulties," which should have prompted the trial court to question Anderson's competency and

order the evaluation. While we agree that some of Anderson's statements arguably raise such a

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

"suspicion," that is not the standard for the showing required to trigger an evaluation for competency to stand trial under Code § 19.2-169.1.[1]

Code § 19.2-169.1(A) provides, in relevant part: "the court shall order that a competency evaluation" of the defendant be performed by a mental health expert if "there is probable cause to believe that the defendant . . . lacks substantial capacity to understand the proceedings against him or to assist his attorney in his own defense."

As this Court explained in Smith v. Commonwealth, 48 Va. App. 521, 633 S.E.2d 188 (2006), "[m]ental illness does not necessarily render a defendant incompetent to stand trial. . . . '[N]either low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence to stand trial.'" Id. at 532, 633 S.E.2d at 194 (quoting Walton v. Angelone, 321 F.3d 442, 460 (4th Cir. 2003)). Thus, for example, "[e]ven a diagnosable psychiatric disorder, like delusional paranoia, does not automatically make a defendant incompetent to stand trial." Id. (citing Bramblett v. Commonwealth, 257 Va. 263, 273, 513 S.E.2d 400, 407 (1999)). Accordingly, consistent with Code § 19.2-169.1, the controlling standard is that, "[w]hatever his mental state, a defendant remains competent so long as he has a substantial capacity to understand the criminal proceedings and to assist counsel in his defense." Id. (citing Orndorff v. Commonwealth, 271 Va. 486, 499-500, 628 S.E.2d 344, 351-52 (2006)). See Godinez v. Moran, 509 U.S. 389, 396 (1993) (applying same standard); Johnson v. Commonwealth, 53 Va. App. 79, 93-99, 669 S.E.2d 368, 375-78 (2008) (same).

Here, during Anderson's plea colloquy with the trial court on the day of trial and his testimony in his own defense, Anderson made statements that clearly could be characterized as "bizarre" in nature, as he now contends. Those statements related primarily to an alleged

---

[1] For purposes of this opinion, we assume without deciding that, in the absence of a motion by counsel, a trial court would have a duty to order *sua sponte* a mental evaluation of a defendant to determine his competency to stand trial, pursuant to Code § 19.2-169.1, in the event the statutory criteria for such an evaluation appeared to be met.

"conspiracy" instituted against him by some unnamed "organization," which "used" the Prince William County police to bring a false charge of grand larceny against him in the instant case. Anderson also claimed that he was a "prophet," who could "foretell and . . . foresee things" and that, at the time the subject crime was being committed in the parking lot of the Quality Inn on Ballsford Road in Prince William County, he was offering this "gift of a prophet" to a man and woman at the City Grill, a bar located near the Quality Inn.

As "bizarre" as those statements may have been, however, we must assess them in the context of the entire record. And having done so, we cannot conclude as a matter of law that there was probable cause to believe Anderson lacked substantial capacity to understand the criminal proceedings against him or to assist his counsel in his defense. We thus reject Anderson's argument that the trial court erred in not ordering *sua sponte* an evaluation of his competency to stand trial under the terms of Code § 19.2-169.1.

(i)

When entering his plea, Anderson stated his full name, gave his date of birth, and indicated he fully understood the grand larceny charge for which he was being prosecuted. To that charge, Anderson pleaded not guilty and acknowledged he was doing so knowingly and voluntarily. Anderson confirmed that he was satisfied with his defense counsel's services, and, when the court asked him if he had received enough time to discuss with his counsel any possible defenses he might have to the charge, Anderson responded: "Of course. He's a good lawyer." Both Anderson and his counsel indicated to the court that the two of them had discussed possible defense witnesses, and his counsel confirmed that he had investigated the names given to him, but decided not to have them testify at trial. Anderson further indicated that he and his counsel had discussed the advisability of a trial by jury as opposed to a bench trial, that he wished to be tried by the court, and that he had signed the jury waiver form. When the

court asked Anderson if he had any questions, Anderson advanced an argument that his right to a speedy trial had been violated because he had been incarcerated for seven months; however, the court rejected the argument because his counsel had agreed to the continuance of his trial date. At the end of this colloquy, the court found that Anderson had "entered a free and voluntary plea of not guilty," and Anderson's counsel raised no objection to the finding.

The matter then proceeded to trial, and the Commonwealth presented its case-in-chief against Anderson. The Commonwealth's evidence, which included eyewitness testimony, showed that Anderson stole a number of tools from a truck located in the Quality Inn parking lot, and hid the tools in a nearby wooded area.

After the Commonwealth rested its case and the court denied Anderson's motion to strike the Commonwealth's evidence, Anderson, upon being called as a witness by his counsel, demonstrated the presence of mind to testify in his own behalf and present an alibi. As indicated above, Anderson testified that he was down the street at the City Grill when the crime was being committed at the Quality Inn. He stated he did not leave the City Grill until between 11:30 p.m. and 11:45 p.m. Anderson contrasted this time frame to the time the crime was allegedly committed, according to what he claimed was the preliminary hearing testimony of the eyewitness to the crime, stating: "Now the guy, the witness, against me said that about eleven o'clock he got up. He says he goes to bed about eleven then about a little after eleven he said he started hearing noises [outside his hotel room at the Quality Inn]. He said this at the preliminary hearing." Anderson also attempted to deflect suspicion for the crime onto someone else, testifying as follows: "[W]hen I left the City Grill, I was approached by two men that said to me, 'Did you see anybody go in my truck?' And I said, 'No.' And I said, 'So I seen somebody go down the hill in black,' and I don't know, you know, I said, 'It looked like he was carrying something, I don't know.'" In a further attempt at denying his culpability, Anderson also

testified that his blue shoulder bag, which the police found alongside of the stolen tools in the wooded area adjacent to the hotel parking lot, had, in fact, been stolen from him three days earlier. This testimony was obviously in direct response to Prince William County Police Officer Lanier's testimony during the Commonwealth's case-in-chief that she saw Anderson with the bag on the day the tools were stolen when she was escorting him, as a trespasser, from a place of business earlier that day.

Finally, at no time did Anderson's defense counsel raise with the trial court any issue regarding Anderson's competency to stand trial. See Johnson, 53 Va. App. at 94, 669 S.E.2d at 375 ("[T]he history of defense counsel's satisfaction with the client's mental health has persuasive weight in determining whether a court should order a competency evaluation." (citing Smith, 48 Va. App. at 536, 633 S.E.2d at 195)).

(ii)

Anderson cites three federal habeas corpus cases in support of his argument on appeal, Thomas v. Cunningham, 313 F.2d 934 (4th Cir. 1963), Kibert v. Peyton, 383 F.2d 566 (4th Cir. 1967), and McLaughlin v. Royster, 346 F. Supp. 297 (E.D. Va. 1972), which are not binding on this Court, but are nevertheless plainly distinguishable from the instant case.

In Thomas, the Fourth Circuit ordered that the petitioner be granted a hearing in federal district court on his habeas petition where petitioner claimed that, based on the information in his pre-trial motion for a mental evaluation, the state trial court became fully apprised of the basis to "'doubt his sanity'" to stand trial, but nevertheless denied the motion and accepted petitioner's subsequent guilty plea. Thomas, 313 F.2d at 940. In that motion, petitioner's defense counsel presented uncontested sworn medical testimony of "two qualified psychiatrists" in which they opined that petitioner was "suffering from a serious psychosis and would be unable on that

- 5 -

account to assist counsel or to understand the charges against him." Id. at 936. No such evidence was presented to the trial court in the instant case.

In Kibert, the Fourth Circuit also ruled in the petitioner's favor on his habeas petition regarding a challenge to his competency to stand trial in state court. Kibert, 383 F.2d at 571. There, neither defense counsel nor the trial court acted to have petitioner evaluated. Id. at 569. Unlike the instant case, however, the petitioner in Kibert pled guilty and the trial court "made no attempt whatsoever to ascertain" whether he "'fully understood the nature and effect of his plea.'" Id. at 568 n.2. As his defense counsel testified in the state habeas proceedings, "Kibert didn't say anything to the Court and I don't recall that the Court asked any questions of [Kibert or the other two defendants]." Id. Further, the Kibert court was able to determine from the record developed during the state habeas proceedings that, prior to trial, defense counsel had "serious doubts as to Kibert's mental condition. Yet he put them aside and entered a plea of guilty solely on the basis of a mere nod of the prisoner's head when asked if he wanted a plea entered on his behalf." Id. at 568. The record also contained from those same proceedings expert medical evidence regarding petitioner's mental condition. Id. at 569-71.

Last, the federal district court in McLaughlin ruled in favor of the petitioner on his habeas petition based on a claim of ineffective assistance of counsel, and not some error on the part of the state trial court in which petitioner was convicted. McLaughlin, 346 F. Supp. at 302. More specifically, the federal district court found that petitioner was prejudiced by defense counsel's failure to investigate petitioner's mental status relative to the time he entered his guilty plea to first-degree murder, as well as the time of the alleged offense. Id. The federal district court further found that, "so far as the trial court knew, ostensibly [petitioner's defense counsel] was rendering to [petitioner] that degree of responsibility as any reasonably competent attorney

- 6 -

would render." Id. Thus, McLaughlin also lends no support to Anderson's argument on appeal in this case.

Accordingly, for the reasons stated above, we affirm Anderson's conviction.

Affirmed.