Jay R. TIMMONS, Petitioner,

v.

C. C. PEYTON, Superintendent of the Virginia State Penitentiary, Respondent.

Misc. No. 4518.

United States District Court
E. D. Virginia,
Norfolk Division.

April 28, 1965.

Daniel Hartnett, Accomac, Va., for petitioner.

Reno S. Harp, III, Asst. Atty. Gen., of Virginia, Richmond, Va., for respondent.

WALTER E. HOFFMAN, Chief Judge.

On October 19, 1961, at approximately 5:15 P.M., the multiple crimes of murder, rape and felonious shooting were committed by the petitioner, Jay R. Timmons. On April 18, 1962, he was tried and convicted of first degree murder by a jury in the Corporation Court of the City of Norfolk, Part II, and his punishment was fixed at death. On May 10, 1962, his court-appointed counsel was granted leave to withdraw from the case as petitioner's family had made other arrangements for legal representation. On June 11, 1962, petitioner's motion for a new trial was denied and the death sentence was imposed. Subsequent proceedings have delayed the execution of said sentence.

A writ of error was granted by the Supreme Court of Appeals of Virginia. In an exhaustive opinion by Justice Spratley the Supreme Court of Appeals of Virginia unanimously affirmed the judgment. Timmons v. Commonwealth, 204 Va. 205, 129 S.E.2d 697. In the present proceeding the Court has the benefit of the record and transcript in the trial on the merits, as well as the record and transcript in the subsequent state habeas corpus proceeding. With one possible minor exception,[1] the opinion of Justice Spratley covers every factual detail relative to the crimes committed and the trial proceedings on the merits of the case. Rather than review the sordid details of the events of October 19, 1961, this Court adopts and incorporates herein all of the facts as set forth in Timmons v. Commonwealth, supra, to the same extent as though they were quoted herein.

Following the decision of the Supreme Court of Appeals of Virginia on March 4, 1963, 129 S.E.2d 697, a rehearing was sought and denied on April 19, 1963. Thereafter, on May 27, 1963, petitioner filed his state court application for a writ of habeas corpus. A plenary hearing was granted, evidence was heard, briefs were submitted and, on July 23, 1963, the state court judge (not the same jurist who presided over the original trial) filed an extensive memorandum denying and dismissing the writ. An order to this effect was entered on July 30, 1963. A writ of error was denied by the Supreme Court of Appeals of Virginia on October 17, 1963. Certiorari was denied by the Supreme Court of the United States on January 20, 1964, Timmons v. Cunningham, 375 U.S. 994, 84 S.Ct. 635, 11 L.Ed.2d 480. Having fully exhausted his state court remedies, petitioner filed his petition for writ of habeas corpus in

1. The opinion in Timmons v. Commonwealth, supra, mentions that petitioner was first committed to a Maryland state mental institution on June 20, 1959. The habeas corpus record indicates that this commitment was on July 20, 1959. The error, if any, was favorable to petitioner.

this Court on the same day, i. e., January 20, 1964. A stay of execution was entered upon the filing of the federal petition.

The present proceeding was heard by this Court pursuant to written stipulation of counsel and the petitioner on the basis of the entire record of both state court proceedings. The written stipulation, in effect, was the full equivalent of a plenary hearing.

Three issues are before the Court for determination. They may be summarized as follows:

(1) At what stage of a criminal investigation or proceeding must counsel be appointed to represent the accused in order to satisfy the "due process" clause of the Fourteenth Amendment?

(2) Must the defendant be present in person and/or represented by counsel when a commitment order is entered by a state court directing the transfer of the accused to a state mental institution for the purpose of determining his sanity at the time of the alleged commission of the offense and for the further purpose of ascertaining his competency to stand trial?

(3) Was the petitioner effectively represented by court-appointed counsel?

The issues will be discussed in the order stated above.

### I.

When petitioner was taken into custody it must be remembered that he had already made serious incriminating statements. Indeed, petitioner does not, even at this late date, deny the act of killing for which he was tried and convicted on his plea of "not guilty by reason of insanity." The evidence establishes that, on the day in question, petitioner first shot a young lady in the legs; he then shot the now deceased victim at least twice and, at some point in the series of his firing the pistol, he again shot the young lady (who miraculously survived the ordeal) in the neck; the testimony substantiates the contention that petitioner ripped the clothes of the murder victim, but whether he actually raped her at this or any other time is not clearly proven; returning to the survivor, he pulled her to the floor, tore her dress and undergarments, and raped her; thereafter he went back to the murder victim "for a minute or two"; completing his series of criminal acts, he returned to the survivor and raped her a second time. After entering the kitchen where he apparently consumed a quantity of pills in an effort to take his own life, he went to the telephone and called the police. According to the survivor, he told whoever answered the telephone that he had "killed two women." Returning to the survivor, he ascertained that she was alive and said, "I had better get you to the hospital." He thereupon picked up the survivor in his arms and transported her to the emergency room at De-Paul Hospital. Upon arrival at the hospital he told a nurse who met him, "I shot her accidentally. I shot two of them." He thereupon returned to the residence of the murder victim which, by that time, was occupied by the police in response to his telephone call, and he was taken into custody. On the trip to police headquarters he told an officer, "The gun went off, it was an accident, the gun went off four times." Later that evening petitioner said, "I am trying to do a favor for someone, and I am not saying any more."

It was in this setting that the investigation was formally commenced. While petitioner claims that he gave the incriminating statement on October 19—the day of the offense—it is obvious that he is in error. He fixes the time of the statement at 4:00 P.M. or 4:30 P.M.—a time prior to the happening of the tragic events which gave rise to this proceeding. The state habeas court discredits petitioner's allegations that he was mistreated and threatened by the police, and that the statement was secured involuntarily by duress during the time petitioner was under the influence of barbiturates, suffering from alcoholism, and in a mentally deficient, if not insane, state of mind. The facts are

that, on the evening of October 19, petitioner became drowsy and when the police ascertained that he had taken a quantity of pills, petitioner was rushed to the hospital for a "stomach pumping" procedure. The contents of his stomach were analyzed, the results being negative for barbiturates and positive for Methapyrilene—the latter being a sleep-producing drug.

■ Petitioner was returned to the detective bureau at approximately 4:00 P.M. on October 20. The record, both on the trial and the state habeas hearing, is silent as to whether either of the two detectives said anything to petitioner as to any right to counsel, or otherwise warned him that anything said by him could be used against him. We presume that nothing was said along these lines. At the state habeas corpus hearing petitioner was not questioned as to whether he was given any warning of self-incrimination. Petitioner's counsel now argues that, in line with the principles pronounced in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, decided after the trial and state habeas proceeding, petitioner was in the "accusatory" stage and, therefore, was entitled to the absolute right of counsel. Conceding as we must that petitioner was in the "accusatory" stage on the afternoon of October 20 when he furnished the signed statement to the police, we do not agree that Escobedo fits this case. While petitioner testified that he requested the assistance of counsel at varying times prior to the day before his preliminary hearing on January 16, 1962, following his return to Norfolk from the Virginia mental institution for the criminal insane, this contention is refuted by the various police officers with whom he came in contact. The state habeas judge again discredited petitioner's testimony on this point. Absent extraordinary circumstances, the federal court reviewing a state habeas corpus plenary hearing must give great weight to the findings of the state court. Hall v. Warden, 4 Cir., 313 F.2d 483; Pannell v. Cunningham, 302 F.2d 633; Brown v. Allen, 344 U.S. 443, 458, 73 S.Ct. 397, 97 L.Ed. 469. Based upon the record before the Court, an independent finding is now made that no request or suggestion as to counsel was advanced by petitioner until the day before his preliminary hearing on January 16, 1962.

Petitioner has testified that he requested the assistance of counsel after being transferred to Southwestern State Hospital at Marion, Virginia, pursuant to a state court order entered on October 25, 1961. He identified a Dr. Centor as being the individual who threatened him and to whom he directed his request for an attorney. Dr. Centor was the chief psychologist at the hospital. As the petition for writ of habeas corpus did not allege that petitioner requested counsel[2] while at the state mental institution, Dr. Centor was not available at the state habeas proceeding. During the course of the state habeas hearing a telephone call was made to Dr. Centor. A stipulation as to what Dr. Centor would testify to, if present, was entered into the record. Inadvertently or otherwise, the stipulation makes no reference as to what Dr. Centor would testify with respect to petitioner's contention that he expressed a desire for counsel. When the federal petition was filed, counsel for respondent filed an affidavit from Dr. Centor but, on motion of petitioner, this Court sustained the motion to strike said affidavit reserving to respondent the further right to take the testimony of said witness. No subsequent effort was made to take Dr. Centor's deposition or otherwise produce him at the hearing. On the bare record we have only the evidence of petitioner that he did request counsel while at the hospital. The state habeas judge held that petitioner had failed to sustain the burden of proof necessary to establish that he was denied the right of

---

2. The petition does allege that the examinations, tests and interrogatories were conducted at the Southwestern State Hospital "without your petitioner having counsel appointed to represent him or without the benefit of counsel."

counsel while at the hospital. Apparently the state court refused to believe petitioner's testimony on this point despite the fact that it stands uncontradicted on this record.

■ While we believe that the state court was justified in branding petitioner's statement as unworthy of belief, we conclude that it is better to dispose of this contention by holding that, assuming arguendo the request for assistance of counsel at the state mental institution, the constitutional rights of petitioner were not invaded even if such a request was made and denied. State mental institutions to which persons accused of crime are frequently sent for the purpose of determining mental competency, both at the time of trial and as of the date of the alleged offense, cannot be thwarted in their efforts to accomplish the purpose of intelligent examinations by the presence of attorneys. Assuming the validity of the commitment order, petitioner would have this Court hold that, at any time during the 61 days petitioner was held for observation, there existed a constitutional right to demand the advice and assistance of counsel. We do not believe that any court could give serious consideration to such an argument and, indeed, no authority has been cited which even remotely touches upon the point. Moreover, and of even greater significance, it should be again noted that the petitioner entered a plea of "not guilty by reason of insanity." It is true that the tests, examinations and interrogations conducted at the mental institution were introduced in evidence *but not until after the petitioner had presented affirmative evidence of insanity by a qualified private psychiatrist who related in detail the tests, examinations and interrogations conducted by him.* The end result of petitioner's contention, if accepted by the court, would mean that a suspected mentally-ill person accused of crime could successfully prevent any study or interrogation by the prosecution, thereby limiting the testimony on insanity to the opinion of a privately-employed psychiatrist and thus destroying the adversary system. As stated by former Chief Judge Sobeloff in Thomas v. Cunningham, 4 Cir., 313 F.2d 934, commenting upon the Virginia statute authorizing the commitment of suspected mentally-ill persons accused of crime:

> "In clear recognition of its constitutional obligation, Virginia expressly authorizes a hearing on the question whether 'the person to be tried is in such a mental condition that his confinement in a hospital for the insane, or colony for the feeble-minded, for proper care and observation is necessary to attain the ends of justice.' Since a defendant cannot always be expected to demand an examination for himself, the judge may invoke the procedure *sua sponte.*"

Accordingly we hold that there is no constitutional right on the part of an accused, committed pursuant to court order as being suspected of insanity, to demand the advice or assistance of counsel while at the mental institution under the circumstances and for the purposes here presented.

■ On January 15, 1962—the day prior to the scheduled preliminary examination in the Municipal Court of the City of Norfolk—petitioner was visited in the Norfolk City Jail by Detective Artman. The purpose of this visit was to ascertain whether petitioner desired to waive his preliminary hearing on the following morning. Petitioner inquired as to *when* he would get a lawyer. Artman replied by stating that an attorney would be appointed for him "if he did not have one of his own at the time that he would be indicted." At this conversation no incriminatory statements were made by petitioner. The following morning petitioner was taken to the Municipal Court and executed the waiver of his preliminary hearing. It is well settled that an accused may waive a preliminary hearing as it is procedural and not jurisdictional. Moreover, Virginia has held that an objection to a procedural defect such as stated above must be made timely. Sny-

der v. Commonwealth, 202 Va. 1009, 121 S.E.2d 452.

Assuming, without deciding, that petitioner actually requested the assistance of counsel at the preliminary hearing, we do not think that it necessarily follows that counsel must be then appointed.[3] The latest and most authoritative voice on this subject comes from the Supreme Court of the United States in Pointer v. State of Texas, 85 S.Ct. 1065, decided April 5, 1965. It is there said:

"In this Court we do not find it necessary to decide one aspect of the question petitioner raises, that is, whether failure to appoint counsel to represent him at the preliminary hearing unconstitutionally denied him the assistance of counsel within the meaning of Gideon v. Wainwright, supra [372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799]. In making that argument petitioner relies mainly on White v. [State of] Maryland, 373 U.S. 59 [83 S.Ct. 1050, 10 L.Ed.2d 193], in which this Court reversed a conviction based in part upon evidence that the defendant had pleaded guilty to the crime at a preliminary hearing where he was without counsel. Since the preliminary hearing there, as in Hamilton v. [State of] Alabama, 368 U.S. 52 [82 S.Ct. 157, 7 L.Ed.2d 114], was one in which pleas to the charge could be made, we held in White as in Hamilton that a preliminary proceeding of that nature was so critical a stage in the prosecution that a defendant at that point was entitled to counsel. But the State informs us that at a Texas preliminary hearing such as is involved here, pleas of guilty or not guilty are not accepted and that the judge decides only whether the accused should be bound over to the grand jury and if so whether he should be admitted to bail. Because of these significant differences in the procedures of the respective States, we cannot say that the White case is necessarily controlling as to the right to counsel. Whether there might be other circumstances making this Texas preliminary hearing so critical to the defendant as to call for appointment of counsel at that stage we need not decide on this record and that question we reserve."

■ There is no contention that petitioner made any incriminatory statement at the preliminary hearing or at any subsequent time prior to the appointment of counsel [4] which took place immediately upon petitioner's indictment at the February, 1962, term of the grand jury. More important, however, is the fact that Virginia, as in Texas, does not permit the acceptance of either a plea of guilty or not guilty on a felony charge at a preliminary hearing. Even the procedure prescribed for waiving an indictment does not permit a plea to be entered at a preliminary hearing on a felony charge. § 19.1–162. In Webb v. Commonwealth, 204 Va. 24, 129 S.E.2d 22, it was held that the requirement of a preliminary hearing (assuming no waiver) of one arrested on a charge of a felony is not jurisdictional, and that its denial does not violate the "due

3. In 1964, several years following petitioner's trial, Virginia adopted § 19.1–241.1 granting an accused felon the right of representation by legal counsel at every stage of any proceeding against him. Petitioner argues that this statute is merely a restatement of constitutional rights pre-existing the enactment of § 19.1–241.1. We disagree.

4. The trial record indicates that court-appointed counsel for petitioner filed a motion on February 27, 1962, seeking an order requiring the Commonwealth to furnish a copy of a written statement made by petitioner to the police on January 31, 1962. The motion was denied. The statement of January 31, 1962, if any ever existed, was not presented in evidence. The court-appointed attorney testified in the state habeas proceeding that he had no knowledge of the statement of October 20, 1961, until it was offered in evidence. The petitioner testified at the state habeas proceeding that he had given two statements, one of which was introduced in evidence.

process" and "equal protection" of the law clauses of § 1 of the Fourteenth Amendment to the Constitution of the United States and § 8 of the Constitution of Virginia. Since Virginia's highest court has spoken on the subject, and in the absence of a positive ruling to the contrary in Pointer v. State of Texas, supra, we hold that petitioner's argument to the effect that he was entitled to the assistance of counsel (assuming that he had requested same) at the preliminary hearing is devoid of merit.

The discussion as to the right to counsel could probably be terminated at this point. Nevertheless, because the petitioner is under a death sentence, we deem it appropriate to state the views of this Court as to the limiting effect of Escobedo v. State of Illinois, supra, and especially in the light of the factual situation herein presented. In Escobedo the defendant, after arrest, made several requests to see his retained counsel who, though present in the building to the knowledge of the police, was refused access to his client. Defendant was not advised of his right to remain silent and, after persistent questioning by the police, made an incriminatory statement to an Assistant State's Attorney which was admitted in evidence at the trial. Defendant was convicted of murder and, on direct appeal, the Supreme Court of the United States reversed and remanded in a five to four decision. It is the broad language in Escobedo which has given rise to much confusion among attorneys and judges. For example, it is said (378 U.S. 490, 84 S.Ct. 1765):

> "We hold, therefore, that where, as here, the investigation is no longer a general inquiry into an unsolved crime but [1] has begun to focus on a particular suspect, [2] the suspect has been taken into police custody, ▉ the police carry out a process of interrogations that lends itself to eliciting incriminating statements, ▉ the suspect has requested and been denied an opportunity to consult with his lawyer, and [5] the police have not effectively warned him

of his absolute constitutional right to remain silent, the accused has been denied 'the Assistance of Counsel' in violation of the Sixth Amendment to the Constitution as 'made obligatory upon the States by the Fourteenth Amendment,' Gideon v. Wainwright, 372 U.S., at 342, 83 S. Ct., at 795, and that no statement elicited by the police during the interrogation may be used against him at a criminal trial."

With three exceptions, petitioner apparently comes within the foregoing holding. The exceptions are (1) petitioner did not request a lawyer at the time of or prior to giving his incriminatory statement, (2) petitioner's counsel did not object to the introduction of the incriminatory statement (a point which will be hereafter considered), and (3) petitioner entered a plea of "not guilty by reason of insanity." A fourth possible exception is that the record is silent as to whether petitioner had been warned of his right to remain silent but, for the purpose of this discussion, we are assuming that he was not warned.

Reverting to Escobedo we find the following language in an attempt to clarify the syllogism previously expressed (378 U.S. 492, 84 S.Ct. 1766):

> "Nothing we have said today affects the powers of the police to investigate 'an unsolved crime,' Spano v. [People of State of] New York, 360 U.S. 315, 327 [79 S.Ct. 1202, 1209, 3 L.Ed.2d 1265] (Stewart, J., concurring), by gathering information from witnesses and by other 'proper investigative efforts.' Haynes v. [State of] Washington, 373 U.S. 503, 519 [83 S.Ct. 1336, 1346, 10 L. Ed.2d 513]. We hold only that when the process shifts from investigatory to accusatory—when its focus is on the accused and its purpose is to elicit a confession—our adversary system begins to operate, and, under the circumstances here, the accused must be permitted to consult with his lawyer."

Law professors, attorneys and judges now apparently overlook the words "under the circumstances here" and place great emphasis on the words *"must* be permitted to consult with his lawyer." They are, furthermore, inclined to the belief that the Supreme Court will eventually drop the bars with respect to one or more of the five elements previously quoted herein. In People v. Dorado, 40 Cal.Rptr. 264, 394 P.2d 952, certiorari pending, the Supreme Court of California recently held that defendant's failure to request or obtain counsel was an exception which did not remove the case from the rule pronounced in Escobedo. On the same day, in a rather obvious effort to obtain a more definitive ruling from the Supreme Court of the United States, the California Supreme Court held that Escobedo was not intended to be retroactive, In re Lopez, 42 Cal.Rptr. 188, 398 P.2d 380, thereby holding that a collateral attack upon a conviction prior to Escobedo was not available to one whose Sixth Amendment rights would have otherwise been expanded under Escobedo. New Jersey has likewise rejected the possible retroactivity of Escobedo in State v. Johnson, 43 N.J. 572, 206 A.2d 737. On a different approach Nevada and Ohio have concluded that each of the factors specified in Escobedo must occur to make the same a controlling precedent. Bean v. State, Nev., 398 P.2d 251; State v. McLeod, 1 Ohio St.2d 60, 203 N.E.2d 349.

The Fourth Circuit has recently distinguished Escobedo in Davis v. State of North Carolina, 339 F.2d 770, decided December 8, 1964, where, in a three to two opinion, it was said:

"This case is, therefore, far from the principle of Escobedo v. [State of] Illinois, 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977]. In Escobedo, a suspect, not otherwise lawfully subject to detention, was being interrogated. During the course of his questioning he repeatedly asked permission to consult his lawyer, and his lawyer was present in police headquarters, insistently demanding access to his client. One time, through opening doors, the lawyer and client actually got a glimpse of each other, but their persistent demands and requests to consult were as persistently refused until after a confession had been obtained. The Supreme Court held, of course, that the suspect should have been allowed to speak to his lawyer who was present for that purpose and who was actively asking, himself, to speak to his client. Denial of the right to consult his attorney was held, under those circumstances, to have been a denial of due process.

"Here, we have no such circumstances. Davis, advised that he could consult an attorney if he wished, sought only to have his sister come to see him. The police did all that they could to assist him in the realization of that wish. When there was no request of legal assistance and when the police did all that reasonably might be expected of them to facilitate the prisoner's seeing the one person he wished to see, it cannot be held that the police unreasonably deprived him of his right to counsel."

The sharp dissenting opinion of former Chief Judge Sobeloff manifestly indicates that the majority interpreted Escobedo as being limited to the facts of that case. Relying upon the California case of People v. Dorado, supra, Judge Sobeloff at least intimates that the request for counsel at a time when the party interrogated may be characterized as in the "accusatory" stage is unnecessary. On the retroactive application of Escobedo, Judge Sobeloff expresses the view that since other federal and state courts have held Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, to be retroactive, Escobedo should be accorded the same treatment.[5] While we

5. It is interesting to note that the Third Circuit, in a case arising out of New Jersey, has held Gideon to be retroactive, Palumbo v. State of New Jer-

have no Virginia or Fourth Circuit decision on the retroactive effect of Escobedo (other than as noted in Judge Sobeloff's dissenting opinion in Davis), we recognize that the Fourth Circuit has held Mapp v. Ohio, 367 U.S. 643, 81 S. Ct. 1684, 6 L.Ed.2d 1081, to be entitled to retroactive application. Hall v. Warden, 4 Cir., 313 F.2d 483. Under no circumstances could the present case be decided upon the theory that Escobedo is not entitled to retroactive treatment in light of the foregoing considerations.

In a direct appeal on a conviction for rape, Virginia has adopted a middle ground as to the necessity of counsel during an interrogation where the defendant was in the "accusatory" stage. Cooper v. Commonwealth, Va., 140 S.E.2d 688. Defendant was represented by counsel at the preliminary hearing which resulted in a dismissal of the charges. Thereafter, without notice to counsel but after warning defendant of his rights, an investigator for the Virginia State Police interrogated the accused on two separate occasions, one of which followed the grand jury indictment while defendant was in jail. A tape recording of the conversation between the four year old child and her mother was made and, at the last interview with defendant, was played to him. Defendant never admitted the crime but at one point in the interview "he started halfway to cry there and he said I don't know why." No other incriminatory words were spoken. In concluding that defendant was entitled to counsel at the time of the second interrogation, the court said:

"It is true that Cooper was advised of his rights before he was examined and that no threats or inducements were made to him. It is also true that the record does not show that Cooper asked to consult with counsel, but the fact remains that he was not experienced in criminal procedure, his intellectual endowment was 'at the lower limits of normal', and his ability to function under stress was 'in a corresponding range.' He had been indicted for a capital offense and was subjected to a lengthy examination by a skillful police investigator who was seeking to obtain an admission or confession. The interrogation was no longer investigatory; it was accusatory. It cannot be successfully denied that the defendant needed the assistance of counsel during this stage of the proceeding.

"We do not mean to say that in all cases counsel must be present when a confession, admission or incriminating statement is made by an accused in order that this evidence be admissible against him in a criminal prosecution. Each case must be judged on its own particular facts.

"We only hold that under the facts and circumstances of this case the defendant was deprived of his constitutional right to the assistance of counsel, and that the trial court, therefore, committed prejudicial error in admitting in evidence the testimony of Mundy concerning the contents of the tape recording and in admitting in evidence the tape recording itself, all of which had a direct bearing on the meaning of his alleged admission 'I do not know why'."

Thus, Virginia, without mentioning Escobedo, has held that, under certain circumstances, counsel must be present at an interrogation stage of an investigation which has focused upon a particular accused. Of course, in Cooper, there was an objection to the contents of the tape recorder and the playing of same.

Again assuming that petitioner was not warned of the right to remain silent, courts are divided as to the effect of Escobedo. In People v. Hartgraves, 31 Ill.2d 375, 202 N.E.2d 33, the defendant was not affirmatively warned that his confession might be used against him,

sey, 334 F.2d 524, but the New Jersey court has now ruled that Escobedo is not

retroactively applied, State v. Johnson, 43 N.J. 572, 206 A.2d 737.

and the Illinois court, examining its prior holdings in light of Haynes v. State of Washington, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513, and Escobedo, pointed out that Haynes merely stated that the failure to warn a defendant and advise him of his right to remain silent is an attendant circumstance which the accused is entitled to have appropriately considered in determining voluntariness and admissibility of his confession. As to Escobedo, Illinois concluded that the refusal of a request for assistance of counsel, coupled with a failure to warn the accused of his right to remain silent, amounted to a denial of the assistance of counsel, but since the accused did not request the assistance of counsel the confession need not be rejected. In State v. Neely, Or., 395 P.2d 557—a decision which the Illinois court considered and rejected—the only contention raised was that the defendant had not been warned of his right to remain silent. The record was silent as to whether the defendant had been so advised, but the court concluded that the defendant's testimony created an *inference* that he was not warned—a situation that is substantially identical with the present case. Oregon held that, under its prior decisions, the confession would not be violative of defendant's rights but, since Escobedo, and considering the dissenting opinion of Mr. Justice White in which he agrees with the majority as to the duty to "warn," Oregon concluded that the necessity of a warning against self-incrimination is now required. While somewhat in a different light as it involved the question of self-incrimination at the trial level, we know that the Supreme Court has now held that no state court may require a defendant to testify as to a matter which may tend to incriminate himself. Malloy v. Hogan (1963) 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653, reversing its prior rulings in Twining v. State of New Jersey, 211 U.S. 78, 29 S.Ct. 14, 53 L.Ed. 97, and Adamson v. People of State of California, 332 U.S. 46, 67 S.Ct. 1672, 91 L. Ed. 1903.

Obviously Escobedo will require a further study by the United States Supreme Court. Under the facts as found in Escobedo it is difficult to disagree with the majority on the conclusion reached. The nation and its law enforcement agencies can properly "live" with this decision. In petitioner's case we note that he does *not* complain or allege, either in the state or federal petitions for habeas corpus, that he was not warned of his right to remain silent. His attack is directed to the refusal of counsel, threats, mistreatment and the failure of his court-appointed counsel to object to the confession taken on October 20, 1961. Such being the case, the issue of any failure to give any warning as to the use of an incriminating statement is not before the Court. Realizing, however, that it may resolve itself into a "merry-go-round" procedure, the statements and conclusions herein reached may forestall such action.

The logical effect of Escobedo, if given the interpretation placed upon it by several courts which have suggested that once the inquiry has begun to focus upon a particular suspect it is then incumbent upon the authorities interrogating the suspect to see to it that the suspect is given an attorney (whether requested or not), is that we have adopted throughout our nation a mandatory system of judicial supervision of investigative processes. The judiciary has always *reviewed* such procedures but never before has it been called upon to supervise same. Let us assume that the interrogating process commences as a general inquiry and, during the course of such interview, the party being interrogated makes certain statements which then lead the interrogating officer to believe that he is the actual suspect. According to many legal authorities it then becomes necessary to stop the interrogation, arrange for the presence of an attorney, warn the suspect of his right to remain silent and then endeavor to proceed with the interrogation. If this is what is intended by Escobedo, we should save ourselves a

great deal of time, effort and expense by the simple process of eliminating all confessions, other than those spontaneously made at the very moment of arrest and prior to any interrogation.

For these reasons—and there are many more hypothetical situations which could be stated by way of illustration—it is the conclusion of this Court that Escobedo is essentially an *ad hoc* decision, especially in light of the qualifying language "under the circumstances here." There may well be a valid distinction in situations where the accused has had his preliminary hearing or has been indicted and is awaiting trial or the appointment of counsel.

Assuming, however, that the conclusion just reached is erroneous, we must again observe that there was *no objection* to the introduction of the written confession. Under such circumstances how can the petitioner now complain, other than as to the issue of ineffective counsel? Should the trial court, on each occasion that a confession is presented in evidence without objection, thereupon excuse the jury and conduct its own investigation *sua sponte* as to whether the requirements of Escobedo have been met? If this is what is necessary, we must again conclude that all confessions should be excluded, even those spontaneously made. We cannot believe that the Supreme Court intended Escobedo to be carried to this extreme.

One final point. Evidence adduced at the habeas corpus hearing *but not introduced at the trial on the merits* reveals that petitioner was given a paraffin test on the evening of October 19, 1961, shortly after arriving at police headquarters. While we believe that such a test was probably incidental to a lawful arrest where the firing of a loaded weapon was involved, we fail to see where such a test, assuming its illegality, plays any part in the determination of petitioner's constitutional rights.

■ We conclude, therefore, that petitioner's rights in this case were not violated in failing to appoint counsel prior to the return of the indictment but, even if violated in some manner, the only possible prejudice was in the introduction of the confession of October 20, 1961, to which there was no objection interposed.

## II.

■■ Little need be said as to the necessity of petitioner's presence in court on October 25, 1961, when the state court judge entered an order committing petitioner to the state mental institution for observation as to his sanity. As Judge Sobeloff said in Thomas v. Cunningham, supra, the judge may invoke the procedure *sua sponte*. We might add that the judge would have been derelict in his duty had he not taken such action. And it is a recognized fact that, in the field of psychiatry, the prospects of making an appropriate evaluation as to the mental condition of the accused are far better when the party to be examined is immediately sent to the mental institution. Petitioner relies upon §§ 37–61.1 and 37–62.1, Code of Virginia, requiring the appointment of counsel prior to civil commitments but, of course, these statutes have no relation to proceedings in which one is accused of a crime which, as the state habeas judge correctly held, are governed by §§ 19.1–227 and 19.1–228. Commitment proceedings as to persons accused of crime are for their protection. The record reflects that notice of the hearing on the entry of the commitment order was given to petitioner who was then a patient under guard at the Norfolk General Hospital, and the commitment order recites that such notice was given. The return of the City Sergeant indicates that the petition for a commitment order was served on October 24, 1961, one day prior to the entry of such order. If the personal presence of the party sought to be committed is required at any such hearing prescribed by § 19.1–228, it will present grave difficulties with respect to many suspected mentally ill persons accused of crime and will, in effect, prejudice the rights of an accused as many such persons are not in condition to appear in court.

### III.

We turn to the allegation of ineffective counsel—a contention that has a familiar ring in all cases involving convicted persons. This Court has had occasion to sustain this contention on several occasions, in some of which the trial judge has been primarily responsible, but at all times this Court has avoided "second-guessing" the performance of the attorney. In any case, irrespective of the result, a judge or lawyer can look back over the trial and say that other action should have been taken. The "Monday morning quarterback" is invariably in a better position to call the signals.

At the outset we observe that the Supreme Court of Appeals of Virginia had occasion to commend trial counsel in the direct appeal, Timmons v. Commonwealth, supra, where it is said:

"The defendant was represented by able and competent counsel both in the trial court and in this Court. In the trial court, it was sought to show that he was insane, and much of the evidence, as we have seen, was brought out in answer to questions propounded by defendant's counsel, and admitted on that issue. He cannot be allowed to take advantage of his claim in the trial court that evidence of his condition at the time of the killing showed that he was insane, and now on appeal be permitted to successfully contend that the admission of such evidence was erroneous and prejudicial to him."

Whatever may be said as to the retroactive effect of Escobedo (1964), Gideon (1963), Haynes (1963), Cooper v. Commonwealth, supra (March 8, 1965), and the many other decisions attempting to distinguish or clarify these recent opinions, we know of no case which attempts to determine the effectiveness of trial counsel on any basis other than what the law was at the time of trial which, in the present situation, was April 17–18, 1962.

Argument is made that there was no objection to the introduction of the written confession obtained from petitioner during a forty minute interrogation on the afternoon of October 20, 1961. Let us review the position in which court-appointed counsel was at that moment. In the first place, we must remember that the petitioner, at his insistence evidenced by a writing delivered to his attorney, had entered a plea of "not guilty by reason of insanity." As observed in State v. Long, 90 N.H. 103, 4 A.2d 865, 6 A.2d 752, such a plea is in the nature of a plea in "confession and avoidance." There had been numerous discussions between petitioner and his counsel as to the plea to be entered, as well as suggestions that a plea of guilty might save petitioner from the electric chair. Unlike the federal courts, the so-called "negotiated plea" is an accepted practice in the state courts, with the prosecuting attorney and defense counsel frequently agreeing upon a joint recommendation to be made to the court in disposition of a criminal case. The final decision on the plea to be entered rested with petitioner.

Moreover, at the time the confession was introduced the lady who was twice raped and was an eyewitness to the murder had already testified with respect to the many sordid details of what occurred on the afternoon of October 19, 1961. The evidence of guilt at the moment the confession was introduced was overwhelming. While the court-appointed attorney was not cross-examined at the state habeas hearing as to his failure to object to the confession, it is perfectly apparent that the attorney concluded that the confession, if it had any bearing on the fairness of the trial, would perhaps be beneficial to petitioner.

Examining the 74 page opinion in Culombe v. Connecticut, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037, we find nothing therein contained which would serve as a warning to petitioner's court-appointed counsel that Escobedo and Haynes would necessarily be forthcoming. Assuming arguendo that petitioner's confession of October 20, 1961, would now be legally impermissible, this has no

bearing on the effectiveness of petitioner's counsel.

█ The principal complaint now asserted by petitioner is that his attorney failed in his duty to make reasonable inquiry in petitioner's home area (Berlin, Maryland) with respect to his prior activities tending to support the issue of insanity. He relies upon Brubaker v. Dickson, 9 Cir., 310 F.2d 30, cert. den. 372 U.S. 978, 83 S.Ct. 1110, 10 L.Ed.2d 143, in which the petitioner was refused a plenary hearing in both the state and federal courts. On this point the case was reversed and a factual hearing was ordered. The test of the attorney's obligation is well stated therein (310 F.2d 37):

> "The test to be applied in determining the legal adequacy of the allegations of appellant's petition is readily stated: 'The requirement of the Fourteenth Amendment is for a fair trial'; the due process clause 'prohibits the conviction and incarceration of one whose trial is offensive to the common and fundamental ideas of fairness and right.' Compliance with this standard required that appellant, charged with a capital offense, be represented at trial by counsel.

> "But the constitutional requirement of representation at trial is one of substance, not of form. It could not be satisfied by a pro forma or token appearance. Appellant was entitled to 'effective aid in the preparation and trial of the case.'

> "This does not mean that trial counsel's every mistake in judgment, error in trial strategy, or misconception of law would deprive an accused of a constitutional right. Due process does not require 'errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render *and rendering* reasonably effective assistance.' Determining whether the demands of due process were met in such a case as this requires a deci-

sion as to whether 'upon the whole course of the proceedings,' and in all the attending circumstances, there was a denial of fundamental fairness; it is inevitably a question of judgment and degree."

The effectiveness of court-appointed counsel for petitioner, on the basis of the trial record, has already been determined by the Supreme Court of Appeals of Virginia. Acknowledging that such a conclusion would not be binding as to subsequent evidence adduced at the habeas corpus hearing, we next have a finding contrary to petitioner's contention by the state habeas corpus judge, with a subsequent denial of a writ of error by Virginia's highest court and a refusal of a writ of certiorari by the United States Supreme Court. Totally aside from the foregoing—which should be sufficient in itself—this Court has carefully reviewed the trial record and transcript, along with the state habeas transcript, and now finds that the argument of ineffective counsel is devoid of merit.

Complaint is made that counsel failed to investigate and arrange for the presence of a Dr. Robbins, a general practitioner from the Eastern Shore of Maryland. Petitioner's counsel knew that this physician, during 1959, had arranged for petitioner's initial commitment to a Maryland state mental institution. He inquired of petitioner and petitioner's mother as to the then whereabouts of Dr. Robbins (referred to in parts of the testimony as Dr. Robertson). He was told that Dr. Robbins had left Maryland and gone to New York. Approximately 13 months following petitioner's conviction Dr. Robbins was located by petitioner's post-conviction privately employed attorneys in Greenwood Lake, New York. The difficulties, if any, in locating Dr. Robbins are not disclosed by the record. The attack upon court-appointed counsel is that he did nothing further in an effort to locate Dr. Robbins. While this is a correct statement of fact, let us examine what the court-appointed attorney did under the circumstances.

He arranged for the entire Maryland state mental hospital record to be forwarded to Dr. Robert H. Thrasher, a local psychiatrist with ample qualifications. He arranged for Dr. Thrasher to testify at the time of trial and a review of Dr. Thrasher's testimony demonstrates his firm opinion that petitioner was insane. There was, of course, evidence to the contrary and the jury did not accept Dr. Thrasher's conclusions. The Maryland psychiatrist who attended petitioner during his stay at the mental institution in 1959 was Dr. Crawford who died shortly prior to petitioner's trial. Court-appointed counsel unsuccessfully endeavored to secure, by court order, a copy of the records of Southwestern State Hospital for the purpose of examination by Dr. Thrasher in advance of trial.

There is little, if anything, that Dr. Robbins could have added to the defense of insanity. Dr. Thrasher knew and testified to the incidents leading to petitioner's commitment to the Maryland state mental institution. There is no contention that Dr. Robbins is peculiarly qualified in the complex field of psychiatry. If the good doctor had been located and brought to Norfolk for the trial, his opinion would have been seriously impaired by his standing as a general practitioner only. Dr. Robbins had not seen or consulted the petitioner since 1959. Dr. Thrasher, on the other hand, was thoroughly qualified in psychiatry and, in addition to studying the reports of petitioner's prior mental difficulties and ascertaining other facts from independent sources, had the opportunity of conferring with and studying the petitioner on approximately four occasions prior to trial. We hold that the court-appointed attorney was not ineffective or otherwise derelict in his duty in not extending greater efforts to locate Dr. Robbins.

We are next told that court-appointed counsel failed to go to Maryland and interview potential witnesses in petitioner's home community on the issue of insanity. Accepting as a finding well supported by the evidence that the attorney was not told of the existence of potential witnesses in the home community, we note that petitioner's sister, Lois Rogers, and his mother, Mabel Deneau, testified in petitioner's behalf at the original trial. The mother described petitioner's behaviour pattern, nervousness, prior mental difficulties, the act of petitioner in shooting himself in the leg, his visit to his home community on October 12, 1961, and what was said by petitioner, his drinking problems, and what Dr. Crawford (the physician who died) had said about petitioner's mental condition.[6] Neither the mother nor sister testified at the state habeas hearing. The attorney testified that he had interviewed the mother on two or three occasions and the only reference to any party in the home community, other than Drs. Robbins and Crawford, was to one Patricia Smith—apparently a girl with whom petitioner had been keeping company immediately prior to his act of shooting himself in the leg. And when we examine the deposition testimony of lay witnesses produced at the state habeas hearing, we note that from a factual standpoint they knew little or nothing more than petitioner's mother had already related. Petitioner now argues that each of these lay witnesses expressed an opinion that petitioner was insane and that this conclusion would have had a decided effect upon the jury. We agree with the respondent that such a conclusory statement would not have been admitted at the original trial. Ramsey v. Commonwealth, 200 Va. 245, 249, 105 S.E.2d 155, 158; Jones v. Commonwealth, 202 Va. 236, 117 S.E.2d 67, 71. Petitioner's reliance upon Forehand v. Sawyer, 147 Va. 105, 136 S.E. 683, is misplaced. That was a will case involving testamentary capacity of the testator, a matter which is governed by other factors. Moreover,

6. Petitioner's attorney attempted to bring out Dr. Crawford's statement to the mother on direct examination, but an objection was sustained. On cross-examination the prosecution asked the questions of the mother and answers were given.

we conclude that, under all the facts and circumstances of this case, it is unreasonable to expect that the court-appointed attorney should visit an area approximately 100 miles from the place of trial for the purpose of conducting a house-to-house canvass in an effort to determine the views of lay witnesses as to the sanity of the accused.

 Complaint is made that the attorney neglected to object to the introduction of certain evidence during the course of the trial. Without finding that the attorney erred in any respect on this point, at the most such an error would be a matter of trial tactics. It has been repeatedly held that mistakes in judgment or trial tactics by defense counsel do not deprive the accused of a constitutional right and are not reviewable on habeas corpus. Tompa v. Commonwealth, 4 Cir., 331 F.2d 552. The record clearly shows that the purpose of court-appointed counsel was to establish the actions of petitioner at the home of the murder victim in order to convince the jury that only an insane person, with no apparent motive, could shoot two young girls, killing one and seriously injuring the other, raping the injured girl twice while she was lying in a pool of her own blood, and raping or attempting to rape the murder victim after she was dead or while she was dying. The Supreme Court of Appeals of Virginia commented upon the failure to object and noted the approach to the problem confronting counsel. The weakness of petitioner's argument on the failure to object is adequately demonstrated by the absence of comment thereon in petitioner's brief filed in this court.

## CONCLUSION

The records in the original trial and state habeas corpus hearing have been minutely examined as this Court is appreciative of the fact that the death sentences are now the subject of nationwide criticism. Such a matter is, of course, for the legislative branch of our government. This Court expresses no independent view as to the sanity of petitioner.

In Virginia, unlike the federal practice, the burden rests upon the accused to prove his mental incompetency. Wessels v. Commonwealth, 164 Va. 664, 180 S.E. 419; Holober v. Commonwealth, 191 Va. 826, 62 S.E.2d 816; Dejarnette v. Commonwealth, 75 Va. 867. The United States Supreme Court has declined to interfere with a state's policy on the issue of insanity. Leland v. State of Oregon, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302. Virginia throws a further safeguard around the execution of the death sentence under § 19.1–235 Code of Virginia, 1950 as amended. The moral question of executing a person of petitioner's mentality is for the executive branch and the courts are powerless to prescribe the answer. Davis v. State of North Carolina, supra; Snider v. Cunningham, 4 Cir., 292 F.2d 683, 686.

We conclude that petitioner was given a fair trial, that his constitutional rights as applied to the facts and trial procedures of this case were not violated, and that he was adequately and effectively represented by an experienced attorney.

By reason of the fact that petitioner is under a death sentence, if an appeal is noted the Court will issue a certificate of probable cause.